GENERAL UNDERWRITERS, INC. v. FRANKLIN J. KLINE
AND OTHERS, *d. b. a.* ST. MICHAEL LUMBER COMPANY.[1]

March 9, 1951.

No. 35,349.

[1]Reported in 46 N. W. (2d) 794.

*Dexter F. Hamilton,* for appellant.
*Elmer & Nowack,* for respondents.

LORING, CHIEF JUSTICE.

This is an action by the assignee of an account receivable to recover from the account debtors. The case was heard without a jury, and the court ordered judgment for defendants. Plaintiff moved for amended findings and conclusions of law or for a new trial. This motion was denied, and plaintiff has appealed. We review only the order denying a new trial.

Defendants are copartners doing business as retailers of lumber building materials under the name of St. Michael Lumber Company. Plaintiff is a Minnesota corporation doing business under the name of General Underwriters, Inc. The trial court found, in effect, that plaintiff corporation is what may be described as a "vest-pocket corporation" or the alter ego of a man named Dexter Hamilton.

Sometime around 1940 or prior thereto, Dexter Hamilton acquired the entire stock of plaintiff corporation. He thereafter transferred this stock to his wife, his son, and his daughter. Some time after the commencement of this action and on or about December 1948, Hamilton's son transferred his shares of stock in plaintiff corporation, so that his mother and sister now own 100 percent of the corporation's stock. The officers of plaintiff corporation at the time this suit was commenced were Dexter Hamilton, president; his son, vice president; and his wife, secretary and treasurer. It is admitted that for several years past the sole activity of plaintiff has been the financing of the Dexter Hamilton Company and of Dexter Hamilton personally. Mr. Hamilton admitted on cross-examination that plaintiff corporation operates rather informally; that it keeps no books of account; that no minutes have been taken for the last four years; that the corporation may have a stock

record, but that its whereabouts is unknown; that it has no employes other than its officers; and that at the time this action was commenced its office consisted of whatever records the corporation had in the Hamilton residence.

At the time this action was commenced, Dexter Hamilton and his son were doing a wholesale lumber business under the partnership name of "Dexter Hamilton Company." At the present time, Dexter Hamilton is the sole owner of the Dexter Hamilton Company, his son having transferred his interest in the partnership to his father.

August 30, 1948, the Dexter Hamilton Company sold part of a carload of lumber to defendants for $380. Although the sale was alleged to have been C. O. D., defendants took delivery of the lumber without paying for it. Plaintiff asserts that on the same day the Dexter Hamilton Company made an oral assignment of the $380 account receivable to plaintiff. On the following day, defendants were served with a garnishment summons in the case of "Clarence Scherer, sole trader dba Scherer Brothers Lumber Co., Plaintiff, Against Dexter Hamilton dba Dexter Hamilton Co., Defendant, and St. Michael Lumber Company, Garnishee." September 1, 1948, Hamilton tried to collect the $380 account receivable from defendants, but defendants refused to pay because of the garnishment summons. On the same day, defendants received an invoice billing them for $380 and notifying them that the account had been assigned to plaintiff.

September 8, 1948, plaintiff, by its vice president, Dexter Hamilton, Jr., notified defendants that it was the assignee of the $380 account receivable and demanded that defendants disclose plaintiff's claim in any disclosure made in the garnishment proceeding then pending. Plaintiff also announced its intention to intervene in the garnishment proceeding. On the same day, Scherer Brothers Lumber Company dismissed the garnishment proceeding.

September 15, 1948, the Scherer Brothers Lumber Company, having obtained a judgment against the Dexter Hamilton Company

for $2,782.29 and having docketed that judgment, caused the sheriff of Wright county to levy upon the account receivable owed by defendants. On the same day, the sheriff served defendants with notice that the garnishment proceeding had been dismissed; the defendants gave the sheriff a check for $380; and the sheriff gave defendants a receipt stating that the check was received for partial payment on the execution under which the levy was made. Plaintiff then brought the present action alleging that the $380 account receivable is due and payable to it as the assignee of Dexter Hamilton Company.

The lower court, in giving judgment for defendants, found that plaintiff corporation and Dexter Hamilton, doing business as Dexter Hamilton Company—

"are not separate persons or entities but in truth and in fact are one and the same person; and that the plaintiff corporation, General Underwriters, Inc., was organized and used by said Dexter Hamilton as an instrument of fraud to hinder and defraud creditors."

Having further found that defendants paid the amount claimed herein to the sheriff of Wright county pursuant to an execution under a judgment against Dexter Hamilton Company, it held that defendants had satisfied and discharged the debt claimed by plaintiff in this suit.

Plaintiff in this appeal has assigned as error the findings and conclusions of law, as stated above, and has further assigned as error the lower court's action in overruling objections to cross-examination of plaintiff's witness, which was directed at proving how plaintiff corporation has been operated internally and that plaintiff is the alter ego of Dexter Hamilton, its appearance as a separate legal entity being a sham and a fraud.

■ One of plaintiff's principal objections is to the trial court's findings that plaintiff and its assignor are one and the same person. Plaintiff claims that no issue was raised in the pleadings as to the

identity of plaintiff and Dexter Hamilton and that findings should not be made on issues not raised by the pleadings. Assuming that to be correct, we think that the technical point which plaintiff seeks to make is altogether too fine. In their answer, defendants alleged that the assignment—if it was made at all—was made with intent to hinder, delay, and defraud creditors. This pleading gave plaintiff fair notice that there would be an inquiry into the circumstances surrounding this assignment and that those circumstances would naturally include, among others, the relationship between plaintiff and its assignor. It also follows that, when the validity of this assignment was placed in issue, the question of whether it was an assignment between parties at arm's length was also placed in issue. Plaintiff's objection is clearly without merit. In any event, as we shall indicate hereinafter, the court's finding that plaintiff and its assignor are one and the same person was not necessary to its decision.

■ In addition to the finding discussed above, the court found that—

"plaintiff corporation, General Underwriters, Inc., was organized and used by said Dexter Hamilton as an instrument of fraud to hinder and defraud creditors."

This finding, which is even more clearly within the pleadings than the findings to which plaintiff objects, is the hard core of fact upon which this decision must rest, and the court's finding of unity between plaintiff and its assignor is more colorful than correct.

■ The lower court's finding that plaintiff and Dexter Hamilton are one and the same person disregards the fact that a corporation is a distinct legal entity even though it is so controlled by another that it is but a tool of such person and not a free agent. This court's opinion in the case of In re Trust Under Will of Clarke, 204 Minn. 574, 284 N. W. 876, devotes considerable discussion to the familiar theory of "piercing the corporate veil" and concludes that, although a corporation should never be regarded as a fiction and although the corporate entity should never be disregarded,

yet courts will not let interposition of corporate entity or action prevent a judgment otherwise required. The court in the Clarke case further concluded that, although the term "piercing the corporate veil" is dialectically ornate, it is but a circuitous and unrealistic description of a court's proper unwillingness to permit corporate presence and action to divert the judicial course of applying the law to ascertained facts. As the court stated (204 Minn. 579, 284 N. W. 878):

"* * * The method neither pierces any veil nor goes behind any obstruction, save for its refusal to let one fact bar the judgment which the whole sum of facts requires."

Although it appears that the trial court was amply justified in finding that plaintiff corporation is merely an instrument of fraud in the hands of Dexter Hamilton, plaintiff contends that defendants have no standing to assert this matter as a defense. Plaintiff relies upon the rule that a debtor has no standing to question the validity of an assignment which is accepted as valid between the creditor and his assignee.[2] On at least one previous occasion this court found it necessary to carve an exception from this rule,[3] and we believe that the case at bar presents another such occasion. For the reasons set forth hereinafter, we hold that the defendants, under the circumstances presented by this case, can question the title of their creditor's assignee. By this holding, we overrule

[2] Rohrer v. Turrill, 4 Minn. 309 (407); Haubrick v. Johnston, 23 Minn. 237; Anderson v. Reardon, 46 Minn. 185, 48 N. W. 777; Cornish, Curtis & Greene Co. v. Marty, 76 Minn. 493, 79 N. W. 507; cf. Hayday v. Hammermill Paper Co. 176 Minn. 315, 223 N. W. 614, 63 A. L. R. 210.

[3] In Greer v. Equity Co-Op. Exchange, 137 Minn. 300, 163 N. W. 527, L. R. A. 1917F, 440, a carrier converted some grain while acting as the agent of the Equity Co-Op. Exchange. The carrier paid the owner of the grain and caused the owner to assign the claim against the Equity Co-Op. Exchange to a "straw man," who prosecuted the claim for the carrier. There, the court allowed defendant, which was liable to the owner of the converted grain, to question the validity of the assignment under which the carrier's "straw man" claimed.

Rohrer v. Turrill, 4 Minn. 309 (407), which on facts substantially the same as those in the case at bar adhered to the general rule.

■ The rationale of the rule that a debtor cannot question the title of his creditor's assignee is that a debtor's only legitimate concern is that he be able to pay with liberating effect.[4] If he can pay to the assignee and discharge his obligation, it is no concern of his that the assignment may be only colorable. However, the rule should be extended no further than this rationale will support it. This court has indicated in dicta that where the assignor or other parties deny the assignee's title the debtor may have reason to put the assignee to proof of the validity of his title.[5] In the present case, once the creditors of plaintiff's assignor had levied upon defendants' obligation, defendants were faced with conflicting claims to the debt which they owed, and, for their own protection, defendants had every right to put either claimant to proof of his title.[6] If they chose to pay voluntarily to one or the other, in the hope of avoiding the expense of litigation, they necessarily took the risk of paying to the wrong claimant, but they should not be denied the right to justify their actions when it is asserted that they paid to the wrong party. Having paid to one claimant or the other, they should not be placed in a worse position than the person to whom they have paid. Although the theories of subrogation and assignment are not well suited for use in the present case, there is every reason to give defendants as much standing to question the validity of plaintiff's title as the creditors (to whom de-

[4] Anderson v. Reardon, 46 Minn. 185, 48 N. W. 777; Cornish, Curtis & Greene Co. v. Marty, 76 Minn. 493, 79 N. W. 507; Hayday v. Hammermill Paper Co. 176 Minn. 315, 223 N. W. 614, 63 A. L. R. 210.

[5] See, Cornish, Curtis & Greene Co. v. Marty, 76 Minn. 493, 494, 79 N. W. 507.

[6] In Rohrer v. Turrill, 4 Minn. 309 at p. 314 (407 at p. 411), it was suggested that a debtor, faced with conflicting claims to the debt, might interplead the claimants and pay the debt into court. This course of action undoubtedly gives the debtor greater protection against subsequent suit than the course of action followed by the present debtors.

fendants paid) had before they were paid. Even plaintiff concedes that creditors of its assignor may question its title. It thus appears that the rule that a debtor cannot question an assignment of his debt is inapplicable where the debtor is faced with conflicting claims of ownership. Furthermore, the rule should not be allowed to shield a fraud from all possible attack. In the usual case, where a debtor pays voluntarily, or is forced to pay his debt to one who has taken it as assignee, judgment creditors of the assignor who are injured thereby may levy upon the property assigned in the hands of the assignee or they may bring suit to have the assignment set aside.[7] However, where a debtor like the present defendants has paid the creditors, they have no subsisting claim against the assignor and cannot attack the assignment. If the debtor has no standing to justify his payment by attacking the assignment, the result produced is a legal-plated fraud. The fraud is invulnerable, and the defendant is forced to pay twice; and, unlike the case where an assignment by the judgment debtor is to a third person as a donee or as a creditor given preference, the present case involves the grossest kind of unjust enrichment because of the fact that plaintiff has been found to be a mere instrument in the hands of Dexter Hamilton, the person on whose behalf defendants have already paid.

We think that the foregoing analysis amply demonstrates that defendants should be allowed to question the validity of the assignment under which plaintiff claims. It was therefore competent for defendants to plead that the assignment under which plaintiff claims is merely colorable and to prove that plaintiff corporation is a mere instrument of fraud in the hands of Dexter Hamilton doing business as Dexter Hamilton Company. By such proof, it is

[7]Brennan v. Friedell, 215 Minn. 499, 10 N. W. (2d) 355 (creditors can disregard the assignment and levy on the assigned property); see, Brasie v. Minneapolis Brg. Co. 87 Minn. 456, 460, 92 N. W. 340, 341, 67 L. R. A. 865 (creditors can levy in disregard of the assignment or may have the assignment set aside).

made to appear that any payment made to plaintiffs would, in effect, be a payment to the Dexter Hamilton Company.

Since M. S. A. 575.01 provides that any person indebted to a judgment debtor may pay to the sheriff the amount of his debt and the sheriff's receipt shall be a sufficient discharge for the amount so paid, defendants' proof of payment under the execution against the Dexter Hamilton Company discharges them from their obligation to that company. If payment to plaintiff would, in effect, be a second payment to the Dexter Hamilton Company, such payment cannot be enforced. In holding that defendants' payment under the levy was, in effect, a payment to plaintiff, we do not ignore plaintiff's existence as a distinct legal entity. We simply follow In re Trust Under Will of Clarke, 204 Minn. 574, 284 N. W. 876, in holding that Dexter Hamilton, acting as a partnership, cannot be permitted to use plaintiff, a corporation, as an instrument to collect a claim which he otherwise would not be entitled to collect.

We find no merit in plaintiff's further contentions that defendants, not being shareholders or creditors, had no standing to inquire into the internal affairs of plaintiff corporation and that defendants were permitted to exceed the proper scope of cross-examination by cross-examining Dexter Hamilton as to the internal affairs of plaintiff corporation.

Where plaintiff's witness testified to the making of the assignment, defendants, on cross-examination, were entitled to inquire into every part or phase of that transaction.[8] The witness who was cross-examined was Dexter Hamilton, and it is well settled that great latitude is to be allowed in the cross-examination of the im-

---

[8]See, 6 Dunnell, Dig. & Supp. § 10318, and numerous cases cited under footnote 94 therein. This is not a case like Newman v. Springfield F. & M. Ins. Co. 17 Minn. 98 (123), cited by plaintiff, for in that case the witness, who was cross-examined about an assignment, had in no way referred to any assignment in his direct examination, and no assignment had been pleaded. Dexter Hamilton did testify about the assignment to plaintiff. It was hardly to be expected that he would testify to matter which would show that the assignment was fraudulent.

mediate parties to the transaction alleged to be fraudulent and that such cross-examination is not to be limited to matters touched upon in the direct examination.[9]

The rule that only creditors and shareholders have standing to inquire into the internal affairs of a corporation obviously is not applicable where the sham nature of the corporation and its fraudulent use by another cannot be disclosed otherwise and where the party inquiring into its internal affairs is one who will suffer by the fraud. The court's ruling which permitted the cross-examination complained of was entirely proper.

Affirmed.

---

[9]See, 3 Dunnell, Dig. § 3915, and numerous cases cited therein.

