**LOANS AND SERVICE, INC., Plaintiff,**

v.

**UNITED STATES of America,
Defendant.**

**Civ. No. 8363.**

United States District Court
N. D. Ohio, W. D.
March 30, 1961.

Fuller, Harrington, Seney & Henry, Henry W. Seney, Thomas L. Dalrymple, Donald M. Hawkins, Toledo, Ohio, for plaintiff.

Russell E. Ake, U. S. Atty., Cleveland, Ohio, Charles K. Rice, Asst. Atty. Gen., Bruce S. Lane, James P. Garland, Jerome Fink, Attys., Dept. of Justice, Washington, D. C., for defendant.

KLOEB, District Judge.

This is an action for refund of Federal income tax for the calendar years 1952, 1953, 1954 and 1955, claimed to have been erroneously or illegally assessed and collected.

Four causes of action are set out in the complaint, and the prayer seeks judgment against defendant for a total sum of $56,630.57, with interest and costs.

The case was tried to the Court and is now submitted on the pleadings, the evidence, the exhibits, the stipulations and the briefs of counsel. The briefs are able, necessarily voluminous and contain much pertinent detail and argument that we shall not attempt to delve into and analyze in this opinion. The written stipulation filed October 17, 1960, contains a detailed statement of the facts agreed upon and hence a restatement of these facts is deemed unnecessary. Briefly, it appears that, on April 7, 1951, the five stockholders and officers and directors of the plaintiff corporation, acting as individuals, obtained a 45-day option to purchase, for the sum of $49,500, 75 acres of unplatted real estate which, in general, now comprises the Lincolnshire development north of Central Avenue in Washington Township, Lucas County, Ohio; that, on May 11, 1951, the option was exercised and, on June 4, 1951, plaintiff obtained the deed for the land through the individuals; that, on December 19, 1951, the J. D. Company was incorporated by the same five individuals who also became the stockholders, officers and directors of the newly incorporated company; that, on April 4, 1952, the J. D. Company bought the 75 acres of land from the plaintiff in exchange for all of its capital stock, and thus became a wholly owned subsidiary of the plaintiff company; that, on October, 1, 1952, about sixteen months after the option had been exercised by plaintiff, the J. D. Company sold to Residential Development Corporation, a subsidiary of the Scholz Construction Company, engaged in the business of development, platting, constructing and selling for residential purposes, the 75 acres involved, plus two additional tracts of 10 acres each that had been purchased by the J. D. Company on September 18, 1952, at the behest of Residential Development Corporation in order to provide adequate access to the 75-acre tract when platted and developed; that the entire tract of 95 acres was purchased from the J. D. Company by Residential Development Corporation for the sum of $255,000, thereby resulting in a profit to the J. D. Company of $174,937.68 on the 75-acre tract and a profit of $4,876.98 on the two 10-acre tracts, the latter having been purchased by the J. D. Company for the sum of $25,000 and priced in the sale at $30,000; that, in order to purchase the two 10-acre tracts, the Residential Development Corporation had advanced to the J. D. Company the sum of $25,000, thus leaving a balance owing to the latter company from the purchaser of $230,000, which was paid by delivery to the J. D. Company of an interest-bear-

ing promissory note secured by purchase money mortgage on the real estate, the note payable in specified sums in the years 1952, 1953, 1954 and 1955 (Exhibit 27).

The questions presented are two in number as follows:

1. Whether the profit realized from the sale of 75 acres of real estate in 1952, the amount of which profit was correctly reported in the income tax returns, should be taxed as gain from the sale of a capital asset held for more than six months or as gain from the sale of property primarily held for sale to customers in the ordinary course of the taxpayer's trade or business, or, as put by the defendant, whether profit from the sale of 95 acres by the J. D. Company to the Residential Development Corporation should be treated as ordinary income received by the taxpayer, Loans and Service, Inc., because the J. D. Company held such land as the *alter ego* of Loans and Service, Inc., and primarily for sale to customers in the ordinary course of the taxpayer's business;

2. Whether the taxpayer who realized the gain on the sale of the 75 acres was Loans and Service, Inc. or the J. D. Company, and whether the Commissioner of Internal Revenue abused his discretion for the calendar years 1952 and 1954 in allocating the entire gross income and all of the deductions of the J. D. Company to Loans and Service, Inc., or, as put by the defendant, whether the Commissioner of Internal Revenue acted properly in determining that it was necessary to allocate the entire gross income and all of the deductions of the J. D. Company to the taxpayer in order to prevent evasion of taxes and clearly to reflect income.

The sections involved are two in number, Section 117(a) (4) and Section 117 (a) (1) (A) of the Internal Revenue Code of 1939, 26 U.S.C.A., and Section 45 Internal Revenue Code of 1939, as amended by Section 128(b) of the Revenue Act of 1943, 26 U.S.C.A. § 45.

Section 117(a) (4) reads as follows:

"The term 'long-term capital gain' means gain from the sale or exchange of a capital asset held for more than 6 months, if and to the extent such gain is taken into account in computing gross income;".

Section 117(a) (1) (A) reads in part as follows:

"The term 'capital assets' means property held by the taxpayer (whether or not connected with his trade or business), but does not include—

"(A) * * * property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business".

Section 45 reads as follows:

"§ 45 (As amended by Sec. 128 (b), Revenue Act of 1943, c. 63, 58 Stat. 21). Allocation of income and deductions.

"In any case of two or more organizations, trades, or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Commissioner is authorized to distribute, apportion, or allocate gross income, deductions, credits, or allowances between or among such organizations, trades, or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such organizations, trades, or businesses."

In seeking a determination of the first question presented, we begin with the premise laid down in the case of Gudgel et al. v. Commissioner of Internal Revenue, 6 Cir., 1959, 273 F.2d 206, at page 210, where the Court quotes from Gamble v. Commissioner, 5 Cir., 242 F.2d 586, 590, as follows:

" 'The question as to whether property was held by the taxpayer primarily for sale in the ordinary course of business is principally a fact question, * * * ' ".

■ We also have in mind, in considering both questions, the principle laid down in the case of Freedman et al. v. United States of America, D.C.N.D. Ohio, E.D.1958, 157 F.Supp. 613, at page 614, affirmed 6 Cir., 266 F.2d 291. wherein we find the following:

"It is settled law that for tax purposes, parent and wholly owned subsidiary corporations are not identical, but are treated as separate entities no matter how closely they are affiliated. National Carbide Corp. v. Commissioner, 336 U.S. 422, 69 S.Ct. 726, 93 L.Ed. 779."

■ What are the pertinent facts bearing on question No. 1?

When the five individuals obtained an option for the purchase of the tract in question, and before the exercise of the option, they engaged the services of one Porter MacDonald, a well-known consulting engineer, to make a survey of the tract and an estimated cost, with a view to platting, improving and preparing the land for sale for residential purposes. After this report had been completed and presented to them, no further action was ever taken looking to the improvement of the land. When the option was exercised and the plaintiff company took a deed for the land no steps were taken during the time that it held possession looking to improvement and, likewise, during the period of time that the J. D. Company held the deed to the land no effort was made looking to improvement or to advertising for sale of the tract in question. Prior to the purchase of the land, the plaintiff company had for some years been engaged in the business of buying and selling residential properties on a small scale. It had never been engaged in the business of buying large tracts of land, platting and improving the same, and selling the same for residential purposes. During the time that the J. D. Company was in possession of the land although it, as well as the plaintiff company, was authorized to deal in real estate, it had never done so aside from the efforts that it put forth in the management and control of the tract of land in question. It thus appears that, if there had ever been any serious intention upon the part of the five individuals who first obtained the option to develop, plat, improve and sell the tract of land as and for residential purposes, that intention, if ever there was one, was abandoned, and certainly there is nothing in the record that would indicate that either plaintiff or its wholly owned subsidiary, the J. D. Company, ever took any action looking toward the sale of pieces of the real estate to customers in the ordinary course of their trade or business.

In the case of Collin v. United States, D.C.N.D.Ohio, W.D.1944, 57 F.Supp. 217, at page 218, this Court said the following:

"While there is evidence that, at the inception of this original partnership, and at the time of purchase of these farm lands, the partnership harbored an intention to subdivide, plat into lots, improve and offer to the public generally the lots so created from the farm lands, yet the conduct of the parties from 1924 on to the time that the taxpayer divested himself of all interest in the partnership holdings indicates a lack of interest in such a method of procedure equivalent to an abandonment of the original idea.

"I am of the opinion that, at the time the taxpayer divested himself of his interest by way of a quitclaim deed, and for at least ten years prior thereto, he was distinctly holding this property either for investment or speculation, and that he was not holding it primarily for sale to customers in the ordinary course of his trade or business. * * * "

When this piece of land was sold to the Residential Development Corporation, it was sold at the solicitation of the latter and not by the solicitation of the seller; it was not advertised for sale by the seller nor by the plaintiff corporation, but was sold only when it was approached by the purchaser with an offer to buy. It appears, under all the circumstances, that from the time that the plaintiff acquired title to the land up to the time that the J. D. Company disposed of the land it was being held for investment or speculation.

In the case of Gudgel et al. v. Commissioner of Internal Revenue, 273 F.2d 206, heretofore referred to, we find on page 210 the following statement:

" * * * It was conceded in argument that if they had sold the farm as a single unit their profits must have been classed as capital gains. Their first sale was at the solicitation of the purchaser. It clearly did not put the taxpayers into the real estate business. * * * ".

We conclude, in determining the first question, that the land here was not held for sale in the ordinary course of trade or business and that, therefore, it constituted capital assets and was correctly treated as such in the J. D. Company income tax returns.

In disposing of the first question presented, we have disposed of the principal issue in this case.

Turning to the second question, whether the Commissioner of Internal Revenue abused his discretion for the calendar years 1952 and 1954 in allocating the entire gross income and all of the deductions of the J. D. Company to the plaintiff company, we must agree with the contentions of the plaintiff.

Plaintiff objects to reliance upon Section 45 for three reasons:

1. No Section 45 issue was raised by the pleadings and, therefore, no such issue is before the Court;

2. Even had a Section 45 issue been raised by the pleadings, there is no evidence in the record that the Commissioner of Internal Revenue ever made any determination as required by the provisions of Section 45 as to tax liability of the plaintiff company for the taxable years in question and that, accordingly, no foundation exists for raising any presumption under Section 45 in favor of the Commissioner;

3. Even had evidence been introduced that the Commissioner of Internal Revenue made a determination under Section 45, such a determination would have been arbitrary and insupportable on its merits.

Plaintiff supports its contentions numbers 1 and 2 with authorities, and particularly with the case of Simon J. Murphy Co. v. Commissioner of Internal Revenue, 6 Cir., 1956, 231 F.2d 639.

■ Passing over objections 1 and and 2 without attempting to determine them, we are of the opinion that reliance upon Section 45 is insupportable on its merits, taking into consideration the facts in this case. Profit from the real estate sale and the other income and deductions reported by the J. D. Company were not attributable to the plaintiff company. In accordance with the principles set down by Judge Weick in the case of Freedman et al. v. United States of America, supra, we believe that the separate corporate entity of the J. D. Company cannot be disregarded. The 75-acre tract of land was sold by and the two 10-acre tracts were acquired and sold by the J. D. Company. Plaintiff company had the right, for reasons pertinent to it, to establish its wholly owned corporation, the J. D. Company, as a separate entity to own the 75 acres. The record indicates that the J. D. Company functioned as a separate corporation in the management, control and sale of the land, apart from the activities of plaintiff.

The relief prayed for in the complaint is granted.

Plaintiff may within 15 days prepare and lodge with the Court findings of fact and conclusions of law drawn in ac-

cordance with this opinion, and defendant may within 15 days thereafter file its exceptions or suggested additions thereto.