## Commonwealth v. Sylvan Seal Milk, Inc.

*Sidney Margulies*, Deputy Attorney General, and *Anne X. Alpern*, Attorney General, for Commonwealth.

*J. Victor O'Brien*, for defendant.

KREIDER, J., April 24, 1961.—This is an appeal by defendant, Sylvan Seal Milk, Inc., a Pennsylvania

corporation, from the decision of the Pennsylvania Board of Finance and Revenue refusing a petition for review filed by defendant from the action of the Sales Tax Board of Review which had denied defendant's petition for refund of a sales tax paid on January 14, 1957, in the amount of $6,808.60. Defendant contended in its appeal that a certain transfer of motor vehicles made to it by its parent, the Borden Company, was a contribution or gift and did not constitute a taxable sale under the provisions of the Selective Sales and Use Tax Act.[1] The trial was held by the court without a jury pursuant to an agreement of the parties and the facts were stipulated.

On January 14, 1957, Borden Company transferred to defendant, hereinafter called Sylvan Seal, its wholly-owned subsidiary, ownership of all the motor vehicles and other assets of Twenty-fourth Street Building Corporation, a Pennsylvania corporation, which Borden had acquired in the liquidation of the latter. The transfer to Sylvan Seal represented in part "a contribution to capital" and in part the settlement of a current account indebtedness owed by Borden to Sylvan Seal. Journal entries recording this transfer appear on the books of Borden and Sylvan Seal and are attached to the stipulation of facts filed by the parties. An examination of these entries discloses that assets of a total value of $3,077,706.78, *including motor vehicles valued at $236,718.23,* were transferred by Borden to Sylvan Seal and that the *indebtedness of Borden* to Sylvan Seal in the amount of $884,361.50 *was considered settled as a result of the said transfer.*

Except to the extent reflected above, Borden received no money or other property from Sylvan Seal in exchange for the transfer to Sylvan Seal of the

---

[1] Section 201 of the Act of March 6, 1956, P. L. (1955) 1228, 72 PS §3403, et seq., as amended.

assets acquired by Borden from Twenty-fourth Street Building Corporation. Similarly, Sylvan Seal gave no money or other property to Borden in exchange for the said assets except the cancellation of Borden's indebtedness to it.

On January 14, 1957, Sylvan Seal, upon demand by the Pennsylvania Department of Revenue, filed its selective sales and use tax return reporting the transfer of said motor vehicles of a value of $226,953.22, and paid a sales tax thereon in the amount of $6,808.-60, computed at the then existing rate of three percent. See section 201, Act of March 6, 1956, P. L. (1955) 1228. A copy of the tax return is attached to the stipulation of the parties.

In its appeal to this court, Sylvan Seal Milk, Inc., contended, as above stated, that the transfer of the motor vehicles from Borden to it, "being for no consideration, did not constitute a 'sale at retail' under the Pennsylvania Selective Sales and Use Tax Act and defendant is therefore entitled to a refund of the tax paid upon such transfer".

Defendant's position, however, was modified subsequently in its brief of argument wherein it averred: *"Defendant concedes that a proportionate part of the value of the motor vehicles transferred was properly subject to tax;* i.e. $884,361.50 (numerator-representing amount of current account indebtedness settled on transfer) over $3,074,371.91 (denominator-representing total value of assets transferred times $236,-718.23 (value of motor vehicles transferred) equals $60,386.76. *Thus defendant admits that Sales Tax in the amount of $1,811.60 was properly assessed* and paid by defendant but contests the legality of the assessment of the balance of $4,977 and seeks a refund of that amount. The basic issue in this case is, of course, the question of whether or not there was a

consideration for the transfer of the motor vehicles to defendant." (Italics supplied.)

In its reply brief, defendant stated:

"In the instant case defendant admits that approximately one-quarter of the motor vehicles in question were transferred for a full consideration, i.e. settlement of indebtedness owing by Borden to Sylvan Seal. The balance of the vehicles, however, were the subject of a contribution, or gift, and section 2(f) (3) of the act can have no application."[2] section 2(f) (3) of the act provides:

"2(f) *'Purchase Price'* . . .

"(3) In any transaction not at arm's length, the purchase price shall not be less than the prevailing market price for similar tangible personal property . . .": 72 PS §3403(f). (Italics supplied.)

When the parent Borden Company transferred its motor vehicles of the value of $236,718.23 to defendant, Sylvan Seal Milk, Inc., the Borden Company owed $884,361.50 to defendant, as above stated. This indebtedness of Borden was wiped out when it transferred to Sylvan Seal assets in the amount of $3,074,-371.91 *in which was included* the said item of $236,-718.23. The books of the Borden Company as shown by its journal voucher for the month of February 1957, a copy of which is attached to the stipulation of facts and marked exhibit "D", explain this transaction as follows:

"Explanation. To record the transfer of certain net assets to Sylvan Seal Milk, Inc. as of January 1, 1957,

---

[2] The value of the motor vehicles on which the Department of Revenue collected the 3 percent sales tax was reported as $226,953.22: stipulation, par. 12. However, an item "Motor Vehicles —$236,718.23" appears on Sylvan Seal Milk, Inc., books "as of 1/2/57": Stipulation, exhibit "E."

representing in part a contribution to capital *and in part the settlement of our current account indebtedness to that subsidiary company.*" (Italics supplied.)

We are of the opinion that all the motor vehicles in question were transferred for a full consideration and that this was a taxable transaction under the Pennsylvania Selective Sales and Use Tax Act. Moreover, this transaction was not at "arms length" (section 2(f)(3), supra), since Borden owned all the stock of Sylvan Seal Milk, Inc. The resolution adopted by the directors of Borden offering to transfer to defendant, Sylvan Seal, "as a contribution to paid-in surplus all the assets it intends to acquire as a result of the liquidation of the Twenty-fourth Street Building Corporation, a Pennsylvania corporation," and the corresponding resolution of the directors of Sylvan Seal Milk, Inc., accepting Borden's offer (exhibit "C") do not set forth fully the reason for the transfer in question. An examination, however, of the journal entries in the books of the respective corporations discloses more clearly the purpose of the transfer.

We think that when Borden transferred the motor vehicles in question, the full value of the same, and not merely one-quarter thereof, had to be applied in computing the sales tax in question. The value reported by defendant to the Department of Revenue was $226,953.22. This value was accepted by the department as a basis for the assessment made and must be construed as representing the prevailing market price of the motor vehicles transferred. To be sure, assets in addition to the value of the motor vehicles were required to be paid by Borden to liquidate the balance of its $884,361.50 indebtedness to Sylvan Seal, but that is no valid reason for taxing only one-quarter of the value of the motor vehicles transferred. The transfer of the vehicles undoubtedly extinguished

$226,953.22 of the $884,361.50 total indebtedness owed by Borden to defendant, Sylvan Seal. Obviously the vehicles were "tangible personal property" as defined in the act, section 2(1) (1), which specifically includes "motor vehicles" and we think that, in contemplation of law, there was a "sale at retail" [3] to defendant who became a "purchaser" for a consideration as defined in section 2(g), 72 PS §3403-2(g). Consequently, the transfer of the vehicles in question was a sale or purchase at retail, subject to the imposition of the tax at the then existing rate of three percent.

Defendant relies upon National Dairy Products Corp. v. Gleeson, 16 D. & C. 2d 390, 72 Dauph. 112, (1958). In that case this court, speaking through President Judge Neely, held that the National Dairy Products Corporation was not liable for payment of the retail sales tax on the fair market value of motor vehicles transferred to it by Rieck Dairy Company and Supplee-Wills-Jones Milk Company, the *merging* corporation. In that case, Judge Neely stated at pages 405-06:

"It is important to bear in mind that we are here considering essentially the question as to whether there was any consideration for the transfer. *Where the transfer is by operation of law,* as is the case here, and where the law deems the assets to have been transferred, then the law itself removes from the transfer any concept of quid pro quo on the part of the corporations involved in the *merger.* In this connection, see Rochelle Investment Corporation v. Fontenot, 34 F. Supp. 118, supra; Socony-Vacuum Oil Co., Inc. v. Sheehan, 50 F. Supp. 1010 (1943), in both of which cases it was held that the transfer of assets in connection with a merger or dissolution was without consideration . . .

---

[3] sec. 2(j) of the act as amended; 72 PS §3403-2(j)).

"When we apply the principles which we have discussed here to the facts in this case, it becomes apparent that *the subsidiary corporations have received nothing in exchange for the title which was passed* to the surviving corporation, plaintiff herein. The title of these motor vehicles under the statutes and under the plans of merger passed when these plans of merger became effective on May 31, 1957, whereupon the subsidiary corporations under the plain language of our Business Corporation Law and the applicable Delaware statute ceased to exist. Nothing, then of legal value could have moved from the surviving to the constituent corporations because the latter, as subsidiaries, went out of existence at the same time that plaintiff acquired title to these vehicles."

In the instant case, defendant and its parent, Borden Company, negotiated the transfer of the vehicles involved without reference to any merger for the simple reason that there was no merger. Consequently, we believe the National Dairy Products case is not applicable here. The Selective Sales and Use Tax Act, as amended, taxes transfers of tangible personal property for a consideration. See section 2(j), 72 PS §3403-2(j). In the absence of a statutory definition of the term "consideration," Judge Neely in the National Dairy Products case (p. 399), reviewed the law under the Uniform Sales Act, the Commercial Code and various applicable cases, and concluded that the term "consideration" in a sales tax statute means "something moving from one person to another, quid pro quo (12 Am. Jur. §72 Contracts, p. 56), to the vendor the price and the vendee the title, . . ."

In the case at bar, we think there was a "quid pro quo." Here, the parent corporation was indebted to the subsidiary in an amount of $884,361.50. Assets in the amount of $3,074,371.91 were transferred, "representing in part a contribution in capital, *and in part*

*the settlement of all current account indebtedness to the subsidiary company"*: Exhibit D of the stipulation of facts. This transaction was effected solely by the voluntary action of the boards of directors of the parent and the subsidiary corporations. As a result thereof, defendant, Sylvan Seal Milk, Inc., received ownership, custody and possession of a large number of motor vehicles and other assets in exchange for which a current account owed to it by Borden was cancelled.

In determining the issues raised in the instant case, it must constantly be borne in mind that the parent Borden and its wholly-owned subsidiary, Sylvan Seal Milk, Inc., are, nevertheless, distinct and separate entities and that there has been no merger of these companies.

"Since a wholly owned subsidiary is generally incorporated or acquired by the parent corporation for the purpose of advantageously carrying on some phase of the parent corporation's activities or business, *the courts have been reluctant* to disregard the separate legal entities of the parties merely *to grant relief from sales*, or similar, *taxes at the expense of the state* or its subdivision. Thus, the contention that because the wholly owned subsidiary and the parent corporation are so closely integrated, sales by one to the other do not constitute 'sales' within the meaning of a sales tax, or similar, statute has been rejected by a number of courts.

"This result has been reached in a number of cases involving sales by a wholly owned subsidiary to the parent corporation, especially where the parties to the transaction have recognized their status as separate legal entities for a considerable time, *enjoyed the economic advantages resulting therefrom,* and in making the transactions observed the usual formalities of purchase and sale": 64 A. L. R. 2d, p. 770, citing

"Rexall Drug Co. v. Peterson, (1952) 113 Cal App 2d 528, 248 P. 2d 433, Re Bush Terminal Co. (1938, CA2 NY) 93 F 2d 661."

*Order*

And now, April 24, 1961, defendant's appeal is dismissed. It is hereby directed that judgment be entered in favor of the Commonwealth of Pennsylvania and against defendant, Sylvan Seal Milk, Inc., in the amount of $6,808.50, which, having been paid, should be marked "satisfied," unless exceptions be filed to this order within the time allowed by law.