## MILWAUKEE MOTOR TRANSPORTATION COMPANY v. COMMISSIONER OF TAXATION.

193 N. W. 2d 605.

December 23, 1971—No. 42462.

*Douglas M. Head,* Attorney General, and *Don J. Bottorff,* Special Assistant Attorney General, for appellant.

*Rider, Bennett, Egan, Johnson & Arundel, Stuart W. Rider, Jr., Dayton E. Soby,* and *Richard J. Nygaard,* for respondent.

MURPHY, JUSTICE.

Appeal from summary judgment awarding plaintiff, The Milwaukee Motor Transportation Company, a refund of corporate income taxes paid pursuant to Minn. St. 290.02 for the years

1967, 1968, and 1969.[1] Plaintiff, a trucking company, is a wholly-owned subsidiary of the Chicago, Milwaukee, St. Paul & Pacific Railroad Company (called the railroad), which paid gross earnings tax on the same income for the same years. The trial court was of the view that the exaction of both corporate income tax on plaintiff and gross earnings tax on the parent railroad company constituted double taxation. The commissioner of taxation asserts error and asks for a reversal.

The issue was submitted on a skeletal stipulation of facts from which it appears that plaintiff is a Wisconsin corporation engaged in the trucking business in Minnesota. Nearly all of its Minnesota revenues are derived from performing cartage service in Minnesota for the railroad. Prior to 1959, the railroad had performed all such cartage service by itself. Plaintiff also receives operating authority under 49 USCA, § 302(c)(2), which provides that its services are considered to be performed by the railroad. It performs services for the railroad only upon railroad instructions, and it does no billing for such services but receives it revenue from the railroad, which bills its customers and collects all shipping charges, including charges for motor vehicle cartage services performed by plaintiff. Revenues paid to plaintiff are based on a schedule of contract charges in effect between it and the railroad.

---

[1] It may be noted that the tax assessed pursuant to Minn. St. 290.02 is described as an "excise" tax for the privilege of existing as a corporation and transacting business within the state. It is imposed upon corporations generally and is measured by "taxable net income." Section 290.02 provides: "An annual excise tax is hereby imposed upon every domestic corporation, except those included within section 290.03, for the privilege of existing as a corporation during any part of its taxable year, and upon every foreign corporation, except those included within section 290.03, for the grant to it of the privilege of transacting or for the actual transaction by it of any local business within this state during any part of its taxable year, in corporate or organized form.

"The tax so imposed shall be measured by such corporations' taxable net income for the taxable year for which the tax is imposed, and computed in the manner and at the rates provided in this chapter."

Plaintiff has never paid a railroad gross earnings tax or filed a return for such tax, but it has filed returns for, and has paid, the corporation income tax, pursuant to § 290.02, since 1959. From 1959 to 1966, the only corporation income tax liability was the minimum tax of $10, which was paid without protest. The 1967 tax of $3,933.65, the 1968 tax of $11,104.55, and the estimated 1969 tax of $5,165 were paid under protest. Plaintiff timely filed refund claims for all taxes paid pursuant to § 290.02 from 1967 to date, a total of $20,503.20.

Plaintiff contends that it is not subject to § 290.02 because the services it performs are deemed "railroad operations." It argues that it is a mere "agent" of the parent railroad company and that its corporate form should be disregarded. The parent railroad company has paid a gross earnings tax on all revenues from "railroad operations," including revenues attributable to plaintiff's trucking services. The gross earnings tax imposed by Minn. St. 1967, § 295.02, is "in lieu of all taxes upon all property within this state owned or operated for railway purposes by such company, including * * * franchises thereof * * *." [2] Nearly all of plaintiff's revenues are received from the railroad and are revenues upon which the railroad has paid a gross earnings tax.

Plaintiff further argues that the tax imposed upon it by § 290.02 is actually a "franchise" or "property" tax. Plaintiff reasons that, since it should be deemed a mere "agent" of the railroad, in essence a "franchise," the imposition of a tax pursuant to § 290.02 amounts to a double taxation of the same railroad revenue. The revenue is taxed once by the "in lieu" gross earnings tax, and then the same revenue is taxed by a "franchise" tax. The state, however, contends that plaintiff is an entirely separate corporate entity and, as such, is subject to the corporation income tax imposed by § 290.02.

In considering the merits of these conflicting claims, it should be noted that we have held that the imposition of a franchise

---

[2] The amendment to Minn. St. 1967, § 295.02, by L. 1969, c. 1147, § 11, does not affect the outcome of the case at bar.

tax upon a sleeping car company, which is also subject to a gross earnings tax, is void as double taxation in contravention of Minn. Const. art. 9, § 1, which requires uniformity of taxation upon the same class of subjects. The Pullman Co. v. Commr. of Taxation, 223 Minn. 96, 25 N. W. 2d 838 (1947). It was also held in Western Union Telegraph Co. v. Spaeth, 232 Minn. 128, 44 N. W. 2d 440 (1950), that a corporation which paid gross earnings taxes was not liable for a franchise or ad valorem tax imposed for the same calendar years.[3] It was held in State v. St. Paul

---

[3] In State v. Duluth, M. & N. Ry. Co. 207 Minn. 618, 622, 292 N. W. 401, 404, the distinctions between the gross earnings tax and the corporation tax are set forth in the following discussion: "* * * [T]he gross earnings tax is a property tax upon all railroad property owned or operated for railroad purposes measured by the gross earnings of such property taken as a whole. Railway Express Agency, Inc. v. Holm, 180 Minn. 268, 230 N. W. 815. That of course includes intangible as well as tangible property. The franchise to exist and to operate is a vital part of the railroad's property absolutely necessary before it can turn a wheel or earn a dollar. It contributes its part to the gross earnings, which are a measure of the tax upon the property. It is quite clear to us that the legislature by the provisions of [Mason St. 1927] § 2246 realized that it was taxing, and intended to tax by means of gross earnings, the property rights of the corporation to exist and to operate when it said that the gross earnings tax should be in full and in lieu of all other taxes upon the property and franchises so taxed.

"The tax imposed upon a corporation by [L. 1933] c. 405, § 2, is described by the legislature in that section as a tax 'for the privilege of existing as a corporation or of transacting any local business within this state during any part of its taxable year, measured by its taxable net income for such year.'

* * * * *

"Like the gross earnings tax law, c. 405, § 2, is a tax upon property measured by the net taxable income of the corporation. By its terms the section makes the tax a property tax and not an excise tax. We therefore hold that the tax imposed by c. 405, § 2, is a tax upon property already taxed under the gross earnings tax and hence as applied to railroad corporations is invalid as to franchises insofar as they are exercised for railroad purposes.

"Earnings from any source other than ownership or operation for a railroad purpose are not included in the gross earnings tax measure.

Union Depot Co. 42 Minn. 142, 143, 43 N. W. 840, 841, that the depot company, whose stock was wholly owned by various railroads using its facilities, was not required to pay gross earnings tax on a percentage of its receipts since "it was never intended or contemplated that [the depot company] should do what may be termed a 'separate and independent railroad business of its own,' but that it was merely designed as an agency through which there might be furnished, for the common benefit and use of all railroads coming into the city, a union depot and terminal facilities, to better enable [the parent railroad corporations] to perform their duties as common carriers." If, in fact, plaintiff and the railroad may be considered in the eyes of the law to be so integrated as to be one taxable entity, it should be conceded that the exaction sought to be imposed here would constitute double taxation. The state contends, however, that since each corporation is a separate and distinct corporate entity and is asked to pay only its own taxes, there can be no double taxation.

■ In considering the issue as to whether or not plaintiff and the railroad are legally, and in fact, one and the same taxpayer, in the sense that the St. Paul Union Depot Company and its several corporate owners constituted one taxable unit, it is necessary to consider the corporate character of both companies. We have been cited to no authority supporting the argument that plaintiff and the railroad are not in fact separate corporate entities. It is true that the railroad owns plaintiff's stock, but that fact does not alter the corporate character of either. It is well settled that a corporation possesses a legal existence separate from its stockholders. It owns its own property, and it must answer for its own contractual obligations and tort liabilities. Trustees of Dartmouth College v. Woodward, 17 U. S. (4 Wheat.) 518, 4 L. ed. 629 (1819); Corcoran v. P. G. Corcoran Co. Inc. 245 Minn. 258, 71 N. W. 2d 787 (1955); Di Re v. Central Livestock Order Buying Co. 246 Minn. 279, 74 N. W. 2d 518 (1956); Gen-

Any property owned by the railroad, but used for a nonrailroad purpose, is subject to ordinary *ad valorem* property taxation."

eral Underwriters, Inc. v. Kline, 233 Minn. 345, 46 N. W. 2d 794 (1951); Matthews v. Minnesota Tribune Co. 215 Minn. 369, 10 N. W. 2d 230, 147 A. L. R. 147 (1943). In In re Trust under Will of Clarke, 204 Minn. 574, 577, 284 N. W. 876, 878 (1939), we said:

"We reject as fundamentally unsound and obsolete the thesis that a corporation can be regarded for any purpose as a mere fiction of law. To reduce it to a fiction is to make it nothing. Then to disregard it as a fiction is to disregard nothing. A fiction cannot sue or be sued, make and perform contracts, own property, commit torts and crimes. A corporation can do all that, and so is not a fiction. So to consider it is to blind thought to large and important reality.

"A corporation is not a person, but has a legal and real individuality. Neither is it artificial, save as it is a generation of law rather than nature. It is in simple fact a legal unit—a very real one—endowed by its creator with many of the rights and attributes of persons. It is so much *sui generis* that to attempt to define it, rather than to describe or enumerate its peculiar features, in terms of the law of persons, tends to obstruct rather than facilitate comprehension. Much worse is it to fictionize in decision concerning a thing about which there is no trace of the fictitious. Fiction has its useful place elsewhere, but not on the bench. Litigants, whose personal and business affairs are real, rightly expect their controversies to go to judgment on real, rather than fictitious, bases."

■ We assume that plaintiff was created for economic reasons which would give a business advantage to the railroad. It is not necessary for us to speculate upon the advantages which a parent company might gain from farming out part of its business to a subsidiary in such a way that savings might be effected and exposure to liabilities limited or avoided. There is nothing wrong with the organization of a subsidiary corporation to carry on a phase of the parent company's operations, and, in contemplation of law, the liabilities and obligations arising from such

transactions between them may be the same as those existing between corporations having no common relationship. 18 Am. Jur. 2d, Corporations, § 505; Annotation, 7 A. L. R. 3d 1343.

■ The general rule is that courts are reluctant to disregard the separate legal entities of the parent corporation and the subsidiary corporation merely to grant tax relief at the expense of the state where the subsidiary is incorporated or acquired for the purpose of advantageously carrying on some phase of the parent corporation's activities or business. If a corporation elects to treat itself as an independent business for some purposes, it should not be permitted to disavow that identity merely to avoid the resultant tax consequences. See, Annotation, 64 A. L. R. 2d 769. It seems to us that National Carbide Corp. v. Commr. of Int. Rev. 336 U. S. 422, 69 S. Ct. 726, 93 L. ed. 779 (1949), is persuasive authority for this statement. That case concerned the taxability of three wholly-owned subsidiaries. They operated strictly in accordance with contracts with the parent company whereby they were employed as agents to manage and operate plants designed for the manufacture of products assigned to each and, as agents, to sell the output of the plants. The subsidiaries were to pay the parent company all profits in excess of 6 percent on their outstanding stock, and the parent company reported as its own income all moneys received from the subsidiaries. In turn, the subsidiaries treated only the 6 percent as their income. In rejecting the corporate agency theory and holding the subsidiaries liable for the tax on 100 percent of their income, the court noted that complete ownership of the corporation and the control primarily dependent upon such ownership are no longer of significance in determining taxability. "* * * [A] corporation formed or operated for business purposes must share the tax burden despite substantial identity, in practical operation, with its owner." 336 U. S. 429, 69 S. Ct. 730, 93 L. ed. 784.

In discussing the same subject in Shelburne Sportswear, Inc. v. City of Philadelphia, 422 Pa. 199, 203, 220 A. 2d 798, 800, the court said:

"Ordinarily, separate corporations retain their distinct identities notwithstanding the fact that they may have common stockholders, directors, and officers. [Citations omitted.] Accordingly, while the corporate entity is no more sacrosanct in the field of taxation than in other fields of the law, the tendency in such matters is not to disregard corporate individuality. 1 Fletcher, Cyclopedia Corporations § 40 (1963). Thus, corporate affiliation has generally not been permitted to reduce the incidence of taxation. 14 Fletcher, Cyclopedia Corporations § 7034 (1965); see, In re Bush Terminal Co., 93 F. 2d 661 (2d Cir. 1938); Loans & Service, Inc. v. United States, 193 F. Supp. 683 (N. D. Ohio 1961); Northwestern Pac. R. Co. v. State Board of Equalization, 21 Cal. 2d 524, 133 P. 2d 400 (1943); Superior Coal Co. v. Department of Revenue, 4 Ill. 2d 459, 123 N. E. 2d 713 (1954); Superior Coal Co. v. Department of Finance, 377 Ill. 282, 36 N. E. 2d 354 (1941). As the Supreme Court of the United States stated in Moline Properties, Inc. v. Commissioner of Internal Revenue, 319 U. S. 436, 438-39, 63 S. Ct. 1132, 1134, (1943), 'the doctrine of corporate entity fills a useful purpose in business life. Whether the purpose be to gain an advantage under the law of the state of incorporation or to avoid or to comply with the demands of creditors or to serve the creator's person or undisclosed convenience, so long as that purpose is the equivalent of business activity or is followed by the carrying on of business by the corporation, the corporation remains a separate taxable entity. * * *'

"In considering the validity of appellee's contention that it is a mere bookkeeping device rather than a truly independent business entity and, therefore, not subject to the present tax, we recognize an element of merit in the argument advanced. However, the matter is one of vantage point, for surely a corporation which does engage, by all traditional standards, in an independent and profitable activity could make the same claim with respect to its relationship to an affiliate wholly owned by the same principals. Even more persuasive would be a like claim by

a subsidiary with respect to the parent corporation. Yet, even though 'a wholly owned subsidiary is generally incorporated or acquired by the parent corporation for the purpose of advantageously carrying on some phase of the parent corporation's activities or business, the courts have been reluctant to disregard the separate legal entities * * * merely to grant relief from sales, or similar taxes at the expense of the state or its subdivisions.' Commonwealth v. Penn Fruit Co., Inc., 78 Dauph. 300, 304 (1962); see Commonwealth v. Prudential Industries, Inc., 80 Dauph. 381 (1963); Commonwealth v. Sylvan Seal Milk, Inc., 25 Pa. D. & C. 2d 790 (1961)."

In In re Bush Terminal Co. 93 F. 2d 661 (2 Cir. 1938), the court considered a case where the sale of steam at cost by a subsidiary to a parent corporation was treated by both companies in their books as a sale. It was held that the separate corporate entities would not be disregarded so as to permit the subsidiary to escape tax under New York City acts taxing receipts from sales and gross receipts of utility companies. The court said (93 F. 2d 663):

"* * * The appellant and its parent company's plan of separate corporations for the conduct of their various activities presumptively is for some gain or advantage, and being separate entities, under the circumstances, appellant is not permitted to deny the right of the appellee to tax for the services rendered."

In Moline Properties, Inc. v. Commr. of Int. Rev. 319 U. S. 436, 438, 63 S. Ct. 1132, 1134, 87 L. ed. 1499, 1502 (1943), the United States Supreme Court made the following frequently quoted statement on the subject of corporate entity and its resultant tax consequences:

"The doctrine of corporate entity fills a useful purpose in business life. Whether the purpose be to gain an advantage under the law of the state of incorporation or to avoid or to comply with the demands of creditors or to serve the creator's personal or undisclosed convenience, so long as that purpose is the equiva-

lent of business activity or is followed by the carrying on of business by the corporation, the corporation remains a separate taxable entity."

In Higgins v. Smith, 308 U. S. 473, 477, 60 S. Ct. 355, 358, 84 L. ed. 406, 411 (1940), the court noted that a person "is free to adopt such organization for his affairs as he may choose and having elected to do some business as a corporation, he must accept the tax disadvantages." This proposition was reiterated in Advance Machinery Exch. Inc. v. Commr. of Int. Rev. 206 F. 2d 1006, 1008 (2 Cir. 1952).

■ This brings us to a consideration of whether these authorities may be reconciled with State v. St. Paul Union Depot Co. *supra,* upon which plaintiff relies. We think they can because the depot company cannot be considered to be a separate corporation with a purpose or vitality apart from its corporate owners. From what has already been said, it is apparent that the corporate structure of the union depot company is unique. "* * * [T]he general nature of its business, as stated in its articles of incorporation, is 'to build, purchase, or lease and operate transfer tracks or railways in the city of St. Paul, open alike to the use of all railroads * * * and in connection therewith to build, lease, or otherwise provide and maintain * * * a union passenger depot, and proper tracks for access thereto; and to that end to construct, purchase, lease, or otherwise secure, maintain, and operate lines of railway in [the city of St. Paul].' " 42 Minn. 142, 43 N. W. 841. Although organized under general law (G. S. 1878, c. 34, tit. 1), the authority of the depot company to operate in St. Paul derives from a special act (Sp. L. 1879, c. CCCXVIII) which provided that it "may obtain the right of way over and across any lands needed for the construction of its railroad or tracks, and may obtain all necessary sites and grounds or land * * * requisite for the proper carrying on of its business * * *." The act further provided that "[a]ny * * * railroad corporation operating * * * within this state * * * whose road runs to or into said city of St. Paul may, by a resolution of

its board of directors, subscribe to the capital stock of the [depot company] ·* * *." Finally, the act stated: "There shall be no unjust discrimination against or in favor of any railroad corporation or railroad company using or desiring to use the said road, tracks and union depot of the said The Saint Paul Union Depot Company, [but the conditions of its use shall] apply alike to all railroads using or desiring to use the said road, tracks and union depot * * *."

When the corporate nature of the depot company is examined, the conclusion must follow that it is a railroad operation owned by other, railroads, which it serves as a necessary facility. It could have no purpose or existence apart from the operations of its corporate owners. While it is true that plaintiff trucking company has authority under 49 USCA, § 302(c)(2), to perform auxiliary railroad service, that fact does not prevent it from engaging in trucking services unrelated to railroad business.

In State v. St. Paul Union Depot Co. *supra,* it was reasonable for the court to say that the imposition of a gross earnings tax upon the depot company as well as upon its corporate owners was double taxation. Unlike plaintiff trucking company, which is a distinct and separate corporate entity with an independent corporate vitality, the depot company, by virtue of the laws which authorized its being and the purposes it served, was in its warp and woof a part of the corporate fabric of the railroads which owned and used it.

■ We conclude, under the facts and the law as we see it, that plaintiff's claim of double taxation is without merit. "Double taxation is objectionable in a legal sense only when the same property or person is taxed twice for the same purpose for the same taxing period by the same taxing authority without taxing all property and persons in the same class a second time." State v. Railway Express Agency, Inc. 210 Minn. 556, 567, 299 N. W. 657, 662 (1941). Here we have two corporations—one a railroad company which has paid its gross earnings tax and the other a distinct and separate corporation, having an independent exist-

ence under an unrelated certificate of incorporation, which is charged with the payment of a different tax. There can be no double taxation where each taxpayer is asked to pay only his own tax. County of Martin v. Drake, 40 Minn. 137, 41 N. W. 942 (1889).

We conclude that plaintiff and the railroad are not the same taxable entity and that the judgment of the district court should be reversed.

Reversed.

OTIS, JUSTICE (dissenting).

I agree with the conclusions of the trial court which held:

"* * * Plaintiff receives operating authority under 49 U.S.C.A. 302 (c) (2) which provides that plaintiff's services are considered to be performed by the railroad. Plaintiff also receives operating authority under I.C.C. Certificate of Public Convenience and Necessity, MC19978 which restricts plaintiff's authority to that which is supplemental to or auxiliary of the Chicago, Milwaukee, St. Paul and Pacific Railroad Company. All shipments are limited to those under a railroad bill of lading. The plaintiff solicits no sales for its own account and receives virtually all its revenue from the Railroad. The Railroad collects these revenues from its customers, pays a gross receipts tax and then pays the revenues to plaintiff. Plaintiff is not responsible to the shippers and receivers of freight for cargo losses, damages or shortages for the Railroad account.

\* \* \* \* \*

"The services plaintiff performs are necessary railroad operations that would have to be performed by the Chicago, Milwaukee, St. Paul and Pacific Railroad Company if the plaintiff corporation was not created * * *.

\* \* \* \* \*

"Since plaintiff is a mere agent of the Chicago, Milwaukee, St. Paul and Pacific Railroad Company, the defendant's attempted imposition of the corporate franchise or income tax under M.S.A. § 290.02 is contrary to the plain meaning of M.S.A.

§ 295.02 and Article 4, Section 32 (A) of the Minnesota Constitution and amounts to double taxation of plaintiff * * *."

The railroad pays a gross earnings tax on revenue generated by the Motor Company. The state now seeks to impose an income tax on the same revenue because it is earned by the Motor Company, a separate corporation, notwithstanding it is owned by the railroad and the railroad is the Motor Company's only source of business.

The parties have stipulated that the Motor Company performs services only on the railroad company's instructions; uses only shipping documents supplied by the railroad; and neither bills shippers nor receives revenue from them. The Motor Company's I. C. C. certificate restricts its operations to service which is auxiliary to the railroad. In this posture of the case, I submit the trial court's decision is supported by our holding in State v. St. Paul Union Depot Co. 42 Minn. 142, 43 N. W. 840 (1889).

There, the state sought to impose a gross earnings tax on the depot company's earnings which were also subject to a gross earnings tax in the hands of the railroads the depot served. Mr. Justice Mitchell pointed out that the depot company was never intended as an independent business but was designed merely as an agency through which the railroads who owned it might be furnished facilities to "better enable them to perform their duties as common carriers * * *." 42 Minn. 143, 43 N. W. 841. Judge Mitchell noted that the depot company was formed as a convenient and economical method of managing the depot business. The charges made by the depot company to the railroads were simply part of the expense of transacting the railroad business. Under those circumstances, we held that we would look beyond the technical status of the depot company as a separate and independent legal entity, and concluded that to impose a tax on both the corporation and its stockholders was double taxation and improper.

In my opinion, the relationship between the Motor Company and the railroad is indistinguishable from that of the depot com-

pany and the railroads it served. In both situations the corporation was an independent entity only in a narrow legal sense. In both cases the corporation was created only as a convenient way to serve the parent company. The tax imposed in both instances was on the earnings of the corporation. The differences are, in my opinion, immaterial—namely, the fact that in one instance there were several parent stockholders rather than one, and the tax in the depot case was a gross earnings tax whereas here the commissioner seeks to impose an income tax. Consequently, unless we are prepared to expressly overrule the depot case it should govern our decision and we should affirm.

KELLY, JUSTICE (dissenting).

I join in the dissent of Mr. Justice Otis. Under Minn. St. 1967, § 295.02, the gross earnings tax paid by the railroad should be in lieu of all other taxes upon all property employed for railway purposes. State v. St. Paul Union Depot Co. 42 Minn. 142, 43 N. W. 840 (1889), should be controlling.