COMMUNITY HOSPITAL LINEN SERVICES, INC.,
AND ANOTHER v. COMMISSIONER OF TAXATION.

245 N. W. 2d 190.

July 30, 1976—No. 46009.

448

[redacted]

*Warren Spannaus,* Attorney General, and *C. H. Luther,* Deputy Attorney General, for relator.

*Moore, Costello & Hart, Marvin J. Pertzik,* and *Bruce E. Kiernat,* for respondents.

MacLaughlin, Justice.

This is a writ of certiorari to the Tax Court. Respondent taxpayers are two nonprofit cooperative associations owned and operated by a group of public hospitals solely for the hospitals' mutual benefit. Respondents appealed to the Tax Court from an order of the commissioner of taxation (now commissioner of revenue) denying respondents' petition to have their real and personal property exempted from taxation. The Tax Court reversed the commissioner's order, concluding that respondents were "institutions of purely public charity" within the meaning of Minn. Const. art. 10, § 1,[1] and Minn. St. 272.02, and, there-

---

[1] Prior to the 1974 constitutional amendments, this provision was contained in art. 9, § 1.

fore, entitled to real and personal property exemptions. The commissioner now seeks a review of the Tax Court's decision. We affirm the Tax Court for the reasons set forth herein, with modifications as to interest.

This matter was submitted to the Tax Court, and to us, on stipulated facts. Respondents, Community Hospital Linen Services, Inc., and Affiliated Hospital Services, Inc., are nonprofit cooperative associations organized under Minn. St. c. 308. Community's articles of incorporation limit its purpose to performing laundry services for its members. Affiliated's articles of incorporation limit its purposes to performing collection services and printing services and such other services for its members as are presently or may subsequently be authorized by § 501(e) of the Internal Revenue Code of 1954. The membership of both associations is limited by their articles of incorporation to hospitals which are tax-exempt organizations. Four Minneapolis hospitals[2] currently own and operate Community for the sole purpose of performing their required laundry services. Eight Minneapolis and St. Paul hospitals[3] currently own and operate Affiliated for the sole purpose of performing their required collection services and printing services. All of these hospitals are exempt from Federal and state income tax, state sales tax, and property tax.

Control and management of respondents are vested solely in their member hospitals. Representatives designated by the member hospitals serve as the directors and officers of respondents without compensation from respondents. Respondents are required by their articles of incorporation to be operated on a non-

[2] Abbott-Northwestern Hospital, Inc.; Fairview Hospital Association; The Lutheran Deaconess Home and Hospital; and American Rehabilitation Foundation, Inc.

[3] Abbott-Northwestern Hospital, Inc.; Fairview Hospital Association; The Lutheran Deaconess Home and Hospital; American Rehabilitation Foundation, Inc.; The Eitel Hospital; Mount Sinai Hospital Association; Baptist Hospital Fund, Incorporated; and Metropolitan Medical Center.

profit cooperative basis for the mutual benefit of their member hospitals without profit or financial gain to respondents themselves. Under this method of operation, each member hospital pays for the services it receives according to the estimated cost of performing the services rendered to such member. At the end of each fiscal year, the actual operating costs of performing the services are determined. If the payments advanced by the member hospitals are greater than the actual operating costs, the surplus is rebated to the member hospitals according to their relative patronage of such services. No part of the surplus inures to the benefit of any person or entity other than the member hospitals, to which it represents a refund of an overpayment.

Before Community commenced operations, three of its four member hospitals individually operated separate laundry facilities on separate properties owned by each of them while its fourth member hospital purchased laundry services from a commercial laundry. Before Affiliated commenced operations, all of its eight member hospitals individually operated collection facilities on separate properties owned by each of them. Seven of these hospitals also operated minimal printing facilities on separate properties owned by each of them while the eighth hospital operated a general printing facility, which also performed printing services for other hospitals, on property leased from a profitmaking taxable organization. Significantly, the real estate and personal property which was owned and used by the hospitals for these operations were classified as tax-exempt property. These operations are now conducted by respondents on a joint basis in a single, centralized facility. The consolidation of such operations has eliminated the former duplication of facilities and resulted in economies of scale and increased efficiency for the member hospitals.

The real estate which is the subject of this appeal is located at 201 Royalston Avenue, Minneapolis, and was acquired by Community on May 1, 1970. Community and Affiliated also own personal property located at that same address. Community sold

$1,500,000 of bonds to finance the acquisition of its real estate, personal property, and working capital. Community's bonds are secured by a first mortgage on its real estate and personal property, and its member hospitals individually guarantee such indebtedness. In addition to their individual guarantees of such indebtedness, the member hospitals have entered into a 15-year contract with Community whereby they are obligated to purchase all of their required laundry services from Community at rates which will be sufficient at all times to provide for the payment of all the expenses of the operation of Community, including debt amortization. Before acquiring its real estate and personal property, Community was advised by the Minneapolis city assessor that in his opinion it would be an organization entitled to exemption from property taxation pursuant to Minn. Const. art. 10, § 1, and Minn. St. 272.02 with respect to property owned and used as described by Community.

Since December 31, 1971, Affiliated has occupied a portion of Community's building which is not needed for Community's current operations. By written agreement between the parties, Affiliated is permitted to occupy its portion of the real estate for a 3-year period on a sharing-of-expenses arrangement. Under the sharing-of-expenses arrangement, Affiliated pays all direct expenses incurred by it and also reimburses Community for indirect expenses relating to the building as a whole but which are a result of and attributable to Affiliated's occupancy. Community will not realize any profit on the sharing-of-expenses arrangement but will merely recover expenses incurred as a result of Affiliated's occupancy and which would otherwise not be incurred if that portion of its real estate were vacant.

Based on these facts, Affiliated has been granted exemption from Federal and Minnesota income taxes. Since Community distributes all of its surplus, if any, to its member hospitals in accordance with § 1382 of the Internal Revenue Code of 1954, Community does not have any taxable income. Both Affiliated and Community have been granted exemption from Minnesota

sales and use tax as "charitable" organizations. However, the commissioner of taxation denied respondents' petition to have their real and personal property exempted from taxation.

■ The issue is whether property is exempt from taxation under Minn. Const. art. 10, § 1, and Minn. St. 272.02 when it is owned and used by an incorporated association which is jointly owned and operated exclusively by a group of public hospitals solely for their mutual benefit on a centralized nonprofit and cooperative basis.

Minn. Const. art. 10, § 1, provides:

"* * * Taxes shall be uniform upon the same class of subjects and shall be levied and collected for public purposes, but public burying grounds, public school houses, public hospitals, academies, colleges, universities, and all seminaries of learning, all churches, church property, and houses of worship, institutions of purely public charity, and public property used exclusively for any public purpose, shall be exempt from taxation * * *."

These exemptions are also incorporated into Minn. St. 272.02. In addition, this court has clearly established that taxation is the rule, that exemption is the exception, and that the burden of proof is on one seeking an exemption to establish that he is entitled to it. Abex Corp. v. Commr. of Taxation, 295 Minn. 445, 207 N. W. 2d 37 (1973); Camping and Education Foundation v. State, 282 Minn. 245, 164 N. W. 2d 369 (1969).

In Christian Business Men's Committee v. State, 228 Minn. 549, 38 N. W. 2d 803 (1949), we noted that while exemption provisions are to be strictly construed and are not to be extended by construction or implication, they are also—

"* * * to be given a reasonable, natural, and practical interpretation in the light of modern conditions in order to effectuate the purpose for which the exemption is granted." 228 Minn. 559, 38 N. W. 2d 811.

The test for determining whether property should be exempted

from taxation under Minn. Const. art. 10, § 1, and Minn. St. 272.02 is that—

"* * * there must be a concurrence of *ownership* of the property by an institution of the type prescribed by the constitution and a *use* of the property for the purpose for which such institution was organized." 228 Minn. 554, 38 N. W. 2d 808.

The commissioner concedes that if the property in this case was owned directly by the public hospitals it would be exempt from taxation. However, the commissioner contends that there is no exemption here because the hospitals do not directly, but only indirectly, own the property through a nonprofit cooperative association. In other words, even though there would have been an exemption if the hospitals had decided to own and operate the property as tenants in common, the hospitals lost the exemption, according to the commissioner, by deciding to own and operate the property through respondent associations. Thus, the question to be answered in this case is whether the fact that the hospitals own and operate the property through an incorporated association, which is technically a separate legal entity, should disqualify the property for the tax exemption.

In State v. Board of Foreign Missions of Augustana Synod, 221 Minn. 536, 22 N. W. 2d 642 (1946), this court specifically rejected the notion that holding property in the name of a subordinate corporation should deprive a tax-exempt organization of the tax exemption for that property. In that case a religious association organized a nonprofit religious corporation for the purpose of conducting its missionary and educational work in foreign lands. The association elected the corporation's board of directors; audited, approved, and controlled its budget and expenditures; determined the policies concerning its operations; and, aside from certain freewill gifts, provided the necessary finances. In holding that certain residential property owned by the corporation and occupied by its executive director enjoyed the same tax-exempt status as the property of an individual

church despite the fact that the corporation was a separate legal entity, this court stated (221 Minn. 544, 22 N. W. 2d 646) :

"It is immaterial that the missionary activities of the church are conducted through a subordinate corporation organized for this specific purpose and subject to its control and direction. The corporate device is a recognized means adopted by many institutions for the administration of certain departmental or divisional activities and has no bearing on the merits."

Thus our holding in State v. Board of Foreign Missions of Augustana Synod, *supra,* clearly establishes the principle that it is immaterial for purposes of property-tax exemption that ownership of a particular piece of property is technically in the name of a separate legal entity so long as the property is actually owned and controlled by a tax-exempt organization and is used for appropriate qualified purposes.

The commissioner's contention that our decision in Milwaukee Motor Transp. Co. v. Commr. of Taxation, 292 Minn. 66, 193 N. W. 2d 605 (1971), impliedly overruled State v. Board of Foreign Missions of Augustana Synod, *supra,* is clearly incorrect. In Milwaukee Motor, we stated (292 Minn. 73, 193 N. W. 2d 609) :

"The general rule is that courts are reluctant to disregard the separate legal entities of the parent corporation and the subsidiary corporation merely to grant tax relief at the expense of the state where the subsidiary is incorporated or acquired for the purpose of advantageously carrying on some phase of the parent corporation's activities or business. If a corporation elects to treat itself as an independent business for some purposes, it should not be permitted to disavow that identity merely to avoid the resultant tax consequences."

However, we expressly recognized an exception to this rule when the subsidiary corporation was created solely for and devoted

exclusively to serving the purposes of the parent corporations.[4] Thus in such a situation where the subsidiary corporation "could have no purpose or existence apart from the operations of its corporate owners," 292 Minn. 77, 193 N. W. 2d 611, the substance of the arrangement should control and the fact that the subsidiary is technically a separate legal entity may be disregarded for tax purposes. Since the subsidiary trucking company in Milwaukee Motor was not prevented from "engaging in trucking services unrelated to railroad business," 292 Minn. 77, 193 N. W. 2d 611, it was in substance and form a separate legal entity and could not disavow that fact for tax purposes. Therefore, the Milwaukee Motor case not only does not overrule State v. Board of Foreign Missions of Augustana Synod, *supra*, but actually reaffirms the principle that a subordinate corporation organized solely to serve parent corporations may be disregarded as a separate tax entity.

---

[4] This exception evolved from this court's decision in State v. St. Paul Union Depot Co. 42 Minn. 142, 43 N. W. 840 (1889). In that case the defendant was a corporation owned and operated by five railroads for the sole purpose of furnishing, at cost, a union depot and terminal facilities for the common use of such railroads. In holding that the fact that the defendant was a separate legal entity should be disregarded for purposes of gross earnings taxation, this court stated (42 Minn. 146, 43 N. W. 842): "* * * We cannot see what difference it can make whether they hold the depot property as tenants in common, or put it in the name of a trustee to hold and manage for their common use, or, as in this case, organize a corporation for the same purpose, as a more economical and convenient method of holding the property, managing the business and apportioning the expenses among themselves. The state plants itself on the technical ground that defendant is a separate and independent legal entity, and that we have no right to consider the functions which it performs, or the relations which it bears to the railway companies who own its stock and use its depot. We think this is too narrow and technical a view of the case. When evasions have been resorted to by railway companies or others to escape taxation, we have unhesitatingly looked through the external form or dress to the substance of the transaction, and the same rule should be applied against the state." This language is particularly applicable in the instant case.

In the instant case, respondents easily fall within the rule that subordinate corporations which have "no purpose or existence apart from the operations of its corporate owners" may be considered as merely an agency or arm of the parent corporations for tax purposes.[5] Respondent associations were organized solely for and devoted exclusively to serving the needs of the member hospitals.[6] Respondents' articles of incorporation specifically forbid them from engaging in any activity unrelated to their purpose of serving the member hospitals. The member hospitals completely own, manage, and provide the necessary financing for respondent associations. No part of any surplus realized by respondents' operations inures to the benefit of any person or entity other than the member hospitals. Nothing has been called to our attention which demonstrates in any way that private advantages accrue as a result of the formation of the separate associations. These facts compel the conclusion that respondent associations are merely arms or agencies of the member hospitals exclusively serving the hospitals in necessary and essential ways. Therefore, the property involved in this case is, for purposes of the property-tax exemption, considered in the same manner as if it were owned and used by the tax-exempt member hospitals. The fact that the laundry and collection activities of the hospital are conducted through a subordinate corporation is, as this court

---

[5] In State v. United Church Homes, Inc. 292 Minn. 323, 195 N. W. 2d 411 (1972), this court indicated that the taxpayer's mere affiliation with a tax-exempt organization is insufficient to confer on it exemption from property taxation. This court noted that the parent organization did "not have any authority to control in any way the petitioning taxpayer's corporation." 292 Minn. 331, 195 N. W. 2d 415. In contrast, the facts in the instant case clearly show that the member hospitals have complete control over the activities of respondents.

[6] Courts in Michigan and Massachusetts have also concluded that nonprofit corporations, similar to respondents, engaged exclusively in performing hospital services are entitled to have their property exempt from taxation. Hospital Purchasing Service v. City of Hastings, 11 Mich. App. 500, 161 N. W. 2d 759 (1968); Children's Hospital Medical Center v. Board of Assessors, 353 Mass. 35, 227 N. E. 2d 908 (1967).

concluded in State v. Board of Foreign Missions of Augustana Synod, 221 Minn. 536, 544, 22 N. W. 2d 642, 646, "immaterial * * * and has no bearing on the merits" of granting the tax exemption.

Since the property involved in the instant case is exempt from taxation because in substance it is the tax-exempt public hospitals which own and use the property, there is no need to determine whether respondents themselves independently qualify as "institutions of purely public charity." Therefore, the commissioner's assertion that respondents would not qualify as "institutions of purely public charity" under the holding in Camping and Education Foundation v. State, 282 Minn. 245, 164 N. W. 2d 369 (1969) is irrelevant since the owners of the taxpayer in that case were not tax-exempt organizations. There, the membership in the corporation consisted of the founders, organizers, and incorporators, plus all individuals who had financially contributed thereto. The corporation was not a subsidiary of another corporation and in prior years it had been operated in substantially the same manner but as a profitmaking enterprise.

The commissioner finally argues that the legislature has considered the question of whether respondents should be given tax-exempt status and has declined to grant them such status. The sole basis for this argument is the fact that in 1973 a bill was introduced into the legislature which would have, among other things, exempted associations similar to respondents from taxation.[7] Apparently the bill was then referred to the Committee on Taxes and Tax Laws, where no formal action of any kind was ever taken. The commissioner interprets this fact as signifying that the legislature is opposed to tax-exempt status for respondents. However, it could just as easily mean that the legislative committee felt that there was no need for such a bill since the existing law already conferred exemption on associations such as respondents. Clearly, no significance whatsoever should be attributed to this legislative inaction.

---

[7] Senate File 1913.

458

■ In General Mills, Inc. v. State, 303 Minn. 66, 68, 226 N. W. 2d 296, 298 (1975), a case involving the taxation of personal property, we held:

"* * * If an assessment or levy is adjudged to have been illegal, and a refund is thereby made, we believe that interests of fairness and equity require that the petitioners receive interest on that refund."

In Hedberg & Sons Co. v. County of Hennepin, 305 Minn. 80, 96, 232 N. W. 2d 743, 752 (1975), we held that a taxpayer was entitled to interest on the refund of illegally assessed real estate taxes, and that this interest begins to accrue from the date the protesting taxpayer makes a demand on the taxing unit of government or from the date of payment of the taxes, whichever is later. Thus, in the instant case, we hold that respondents are entitled to interest on the refund of the taxes illegally assessed against their exempt property at the statutory rate of 6 percent per annum, and that this interest accures from the date respondents petitioned the commissioner of taxation for the exemption or the date of payment of the disputed taxes, whichever is later. Therefore, we affirm the order of the Tax Court except that it shall be modified to allow respondents interest from the date of respondents' petition or the date of payment of the taxes, whichever is later.

Affirmed as modified.

MR. JUSTICE OTIS took no part in the consideration or decision of this case.