**HEALTHEAST, Relator,**

and

**University of Minnesota Physicians, intervenor, Relator,**

v.

**COUNTY OF RAMSEY, Respondent.**

**No. A07–1086.**

Supreme Court of Minnesota.

May 22, 2008.

J. Patrick Plunkett, John G. Patterson, Martin D. Kappenman, Moore, Costello & Hart, Minneapolis, MN, for Relator HealthEast.

Michael C. Flom, Gray, Plant, Mooty, Mooty & Bennett, Minneapolis, MN, for Intervenor/Relator University of Minnesota Physicians.

Darwin J. Lookingbill, Ramsey County Attorney's Office, St. Paul, MN, for Respondent County of Ramsey.

## OPINION

PAUL H. ANDERSON, J.

In this case, we review the final order of the Minnesota Tax Court denying HealthEast, a non-stock, non-profit corporation, an exemption from payment of real property taxes assessed in 2002, 2003, and 2004

on the Bethesda Clinic. HealthEast provides management services for a fee to various hospitals and clinics in the HealthEast healthcare system. At the time of the assessments, Bethesda Clinic was owned by HealthEast and leased to the University of Minnesota and University of Minnesota Physicians. HealthEast and University of Minnesota Physicians contend that the subject real property is exempt from taxation under Minn.Stat. § 273.19 (2006). Section 273.19, subdivision 1, provides that property owned by certain types of entities, including "benevolent societ[ies] or institution[s]" and "corporation[s] whose property is not taxed in the same manner as other property," and leased to another entity is treated for property tax purposes as the property of the lessee. The tax court determined that HealthEast was neither a "benevolent society or institution" nor a corporation "whose property is not taxed in the same manner as other property," and on that basis ruled that the property was not exempt from taxation. In reaching its decision, the tax court rejected HealthEast's argument that the court should not look to HealthEast itself as the property's fee owner but rather consider the larger care system of which HealthEast is a part. HealthEast and University of Minnesota Physicians appealed. We reverse and remand.

Relator HealthEast, a Minnesota non-stock, non-profit corporation, was the fee owner of the subject real property for all three tax assessment years at issue. The subject property is located at 580 Rice Street in Saint Paul, Ramsey County, Minnesota, and is the site of Bethesda Clinic. In assessment year 2002, the University of Minnesota leased and operated Bethesda Clinic. In assessment years 2003 and 2004, intervenor-relator University of Minnesota Physicians (UMPhysicians) assumed the lease and the operations of Bethesda Clinic from the University of Minnesota. UMPhysicians is the designated faculty clinical practice organization of the University of Minnesota Medical School. Residents in the medical school's Department of Family Practice and Community Health receive training through Bethesda Clinic. Although the residents who receive training through Bethesda Clinic also see patients at St. Joseph's Hospital, one of the four public hospitals in the HealthEast system, it is our understanding from the record that Bethesda Clinic is operated by UMPhysicians, rather than by HealthEast.

UMPhysicians is a non-profit corporation under Minn.Stat. ch. 317A (2006). Its articles of incorporation state that it "shall be operated exclusively for charitable, scientific, and educational purposes" to: (1) support quality instruction to medical students, residents, and interns at the University of Minnesota Medical School, (2) perform and support medical research in conjunction with the medical school; and (3) provide complete, efficient, and coordinated quality medical care to patients served by the medical school faculty.

Ramsey County assessed real property taxes against the subject property for the years 2002, 2003, and 2004. HealthEast timely petitioned for review of each assessment and UMPhysicians, as lessee of the property, intervened. Before trial, the county filed a motion to compel HealthEast to respond to the county's requests for discovery concerning HealthEast's operation of clinics at other locations. HealthEast opposed discovery on the grounds that it was a "public hospital" under Minn. Stat. § 272.02, subd. 4 (2006), and therefore tax-exempt under section 273.19 as a "corporation whose property is not taxed in the same manner as other property." The court granted the county's motion to compel, ruling that "a corporation whose

property is not taxed in the same manner as other property" referred to entities, like land-grant institutions, "whose property is exempt across the board." The court therefore indicated that HealthEast would be required to demonstrate at trial that it was a "benevolent society or institution" under section 273.19, which the court equated with an "institution of purely public charity" under Minn.Stat. § 272.02, subd. 7 (2006).

The matter was submitted to the tax court on the basis of a detailed stipulation of facts, supporting exhibits, trial briefs, and oral argument. Based on this record, the tax court concluded that HealthEast had not established that it was an institution of purely public charity under *North Star Research Institute v. County of Hennepin*, 306 Minn. 1, 236 N.W.2d 754 (1975), and therefore Bethesda Clinic could not constitute tax-exempt property under section 273.19. Although unnecessary to its decision, the tax court further concluded that UMPhysicians also had not established that it was an institution of purely public charity under *North Star*. HealthEast and UMPhysicians appealed to our court.

We review tax court decisions to determine whether the court's decisions are supported by the evidence and in conformity with the law. *Bond v. Comm'r of Revenue*, 691 N.W.2d 831, 835 (Minn.2005). In this case, HealthEast and UMPhysicians do not challenge the court's factual findings, but they do challenge its conclusions of law. We review the court's legal determinations de novo. *ILHC of Eagan, LLC v. County of Dakota*, 693 N.W.2d 412, 419 (Minn.2005). Under Minn.Stat. § 272.01, subd. 1 (2006), all property is

presumed to be taxable, and we have held that the taxpayer bears the burden of proving entitlement to an exemption. *E.g., Croixdale, Inc. v. County of Washington*, 726 N.W.2d 483, 487 (Minn.2007). Exemptions from property tax liability are strictly construed. *E.g., Am. Ass'n of Cereal Chemists v. County of Dakota*, 454 N.W.2d 912, 914 (Minn.1990).

For property to be exempt from taxation, there generally must be "a concurrence of *ownership* of the property by an institution of the type prescribed by the constitution and a *use* of the property for the purpose for which such institution was organized." *Christian Business Men's Comm. of Minneapolis, Inc. v. State*, 228 Minn. 549, 554, 38 N.W.2d 803, 808 (1949) (emphasis in original). That is, as a general rule, to be exempt from taxation the property must be both owned by an exempt entity and used by that entity for an exempt purpose. *See Ideal Life Church of Lake Elmo v. County of Washington*, 304 N.W.2d 308, 313 (Minn.1981).

In this case, there is no concurrence of ownership and use: the property is owned by one entity (HealthEast) but used by another (UMPhysicians). Two Minnesota statutes address such a situation. Under Minn.Stat. § 272.01, subd. 2 (2006), property exempt from ad valorem taxes—as well as taxes in lieu of ad valorem taxes—that is "leased, loaned, or otherwise made available and used * * * in connection with" a for-profit business is subject to a use tax "in the same amount and to the same extent as though the lessee or user was the owner of such property."[1] Thus, when property of a tax-exempt entity is leased to a for-profit business, the proper-

---

1. Under Minn.Stat. § 272.01, subd. 2(c) (2006), this use tax is assessed against the lessee or user of the real property "in the same manner as taxes assessed to owners of real or personal property, except that such taxes shall not become a lien against the property."

ty is subject to a use tax determined as though it were owned by the lessee.

The other statute, Minn.Stat. § 273.19, subd. 1, addresses the tax status of property that is owned by a tax-exempt entity and leased to another entity. It is under this statute that HealthEast and UMPhysicians assert that the subject real property is exempt. Minnesota Statutes § 273.19, subd. 1, provides that (with exceptions not applicable here): "[T]ax-exempt property held under a lease for a term of at least one year, and not taxable under section 272.01, subdivision 2, or under a contract for the purchase thereof, shall be considered, for all purposes of taxation, as the property of the person holding it." As a result, when property that is tax-exempt under section 273.19 is leased to a tax-exempt entity and used for a tax-exempt purpose, it remains tax-exempt. That is, section 273.19 provides an exception to the requirement that, to be exempt from taxation, real property must be both owned by an exempt entity and used by that entity for an exempt purpose.

Section 273.19 sets out several requirements. First, the property in question must be "tax-exempt property" under section 273.19's special definition. Second, the property must be "held under a lease for a term of at least one year, and not taxable under section 272.01, subdivision 2, or under a contract for the purchase thereof." If these requirements are met, then section 273.19 provides that the property "shall be considered, for all purposes of taxation, as the property of the person holding it." In this case, HealthEast and UMPhysicians contend that under section 273.19 the subject property is exempt from real property taxes because it is held by a tax-exempt entity (UMPhysicians) and used by that entity for an exempt purpose.

Although Minn.Stat. § 272.02 (2006) lists specific kinds of property that are exempt from taxation in Minnesota, section 273.19 incorporates its own definition of "tax-exempt property." The definition reads as follows: "property owned by the United States, the state, a school, or any religious, scientific, or benevolent society or institution, incorporated or unincorporated, or any corporation whose property is not taxed in the same manner as other property." [2] Minn.Stat. § 273.19, subd. 1. In interpreting this language, the tax court equated "benevolent society or institution" with "institution of purely public charity," which is an entity that is exempt from property taxation under Minn.Stat. § 272.02, subd. 7. Applying the six factors set out in *North Star*, 306 Minn. at 6, 236 N.W.2d at 757, the court concluded that HealthEast is not an "institution of purely public charity," and that, therefore, the property was not tax-exempt under section 273.19.[3]

HealthEast does not challenge the tax court's finding that it does not meet the first requirement of section 273.19—that HealthEast itself qualifies as an entity whose property is tax-exempt property under section 273.19's special definition. HealthEast does not challenge this finding because it does not contend that as a sepa-

---

**2.** The definition of "tax-exempt property" under section 273.19 differs from that under Minn.Stat. § 272.02 (2006), which exempts from taxation "public burying grounds" (subd. 2), "public schoolhouses" (subd. 3), "public hospitals" (subd. 4), "academies, colleges, and universities, and all seminaries of learning" (subd. 5), "churches, church property, and houses of worship" (subd. 6), "[i]n-stitutions of purely public charity" (subd. 7), and "public property exclusively used for any public purpose" (subd. 8).

**3.** As noted above, the tax court earlier rejected HealthEast's argument that a public hospital is a "corporation whose property is not taxed in the same manner as other property."

rate corporation it is a "benevolent society or institution" or "a corporation whose property is not taxed in the same manner as other property." Rather, HealthEast appears to contend that, in determining whether Bethesda Clinic is tax-exempt property under section 273.19, the court should have considered whether the HealthEast care system, of which HealthEast is a part, is either a "benevolent society or institution" or a "corporation whose property is not taxed in the same manner as other property."

In essence, HealthEast argues that the tax court should have ignored HealthEast's status as a separate corporate entity and, instead, have attributed to it the characteristics of the larger HealthEast care system—particularly, the characteristics of the four public hospitals that are part of that system.[4] Had the court done so, HealthEast contends, the court would have concluded that Bethesda Clinic was tax-exempt property under the definition in section 273.19, subd. 1, either because the HealthEast care system is a "benevolent society or institution" or because the HealthEast care system is a "corporation whose property is not taxed in the same manner as other property." Therefore, we will first review the tax court's decision to consider, for purposes of section 273.19, the nature of only HealthEast as the property's fee owner and not the larger HealthEast care system.

For purposes of federal income taxation, the United States Supreme Court has held that generally "a corporation formed or operated for business purposes must share the tax burden despite substantial identity, in practical operation, with its owner." *Nat'l Carbide Corp. v. Comm'r*, 336 U.S.

422, 429, 69 S.Ct. 726, 93 L.Ed. 779 (1949). As the Court has explained,

The doctrine of corporate entity fills a useful purpose in business life. Whether the purpose be to gain an advantage under the laws of the state of incorporation or to avoid or to comply with the demands of creditors or to serve the creator's personal or undisclosed convenience, so long as that purpose is the equivalent of business activity or is followed by the carrying on of business by the corporation, the corporation remains a separate taxable entity.

*Moline Props., Inc. v. Comm'r*, 319 U.S. 436, 438–39, 63 S.Ct. 1132, 87 L.Ed. 1499 (1943) (footnote omitted).

We have adopted the Supreme Court's *Moline Properties* rule for purposes of Minnesota corporate income taxes. *Milwaukee Motor Transp. Co. v. Comm'r of Taxation*, 292 Minn. 66, 193 N.W.2d 605 (1971). In *Milwaukee Motor Transportation*, we stated that we would not disregard the separate corporate status of a subsidiary corporation that is "incorporated or acquired for the purpose of advantageously carrying on some phase of the parent corporation's activities or business." *Id.* at 73, 193 N.W.2d at 609.

The situations in which we have disregarded an entity's separate corporate status for tax purposes have been very limited. For example, in *State v. St. Paul Union Depot Co.*, 42 Minn. 142, 43 N.W. 840 (1889), we considered whether the corporation that owned the St. Paul Union Depot was subject to a separate gross earnings tax in addition to the gross earnings tax to which its railroad shareholders were then subject. *See* Minn.Stat. §§ 1387, 1389 (1888) (imposing a percentage tax on railroads' gross earnings, "in

---

4. Those public hospitals are Bethesda Hospital, St. John's Hospital, St. Joseph's Hospital, and Woodwinds Hospital.

full [payment] of all taxation and assessment whatever"). In *St. Paul Union Depot*, we noted that all of the depot corporation's stock was owned by the railroads that operated in St. Paul, meaning that the stock of the corporation that owned the depot "represents and is the exact equivalent of all the property of that corporation." 42 Minn. at 143, 145, 43 N.W. at 841, 842. The shareholder railroads shared proportionally both the expenses of operating the depot and the interest on the bonds sold to construct the depot. *Id.* at 144, 43 N.W. at 841. The railroads then passed those costs through to passengers as part of passenger ticket prices. *Id.* at 144–45, 43 N.W. at 841

Based on these facts, we concluded that to impose a gross earnings tax on both the corporation that owned the depot and on its railroad shareholders would have resulted in double taxation of the same property. *Id.* at 145, 43 N.W. at 842. We also noted that the amount of the gross earnings tax payable by each of the shareholder railroads was no different, whether the railroads owned stock in the corporation that owned the depot or held the property directly as tenants in common:

> If the railway companies had owned and used this depot as tenants in common, the percentage on their gross earnings payable to the state would have been the same as now, and yet that percentage would have paid the taxes on the depot the same as on any other property held and used by them for railway purposes. *We cannot see what difference it can make whether they hold the depot property as tenants in common, or put it in the name of a trustee to hold and manage for their common use, or, as in this case, organize a corporation for the same purpose, as a more economical and convenient method of holding the property, managing the business and*

> *apportioning the expenses among themselves.*

*Id.* at 146, 43 N.W. at 842 (emphasis added). In *St. Paul Union Depot* we expressly rejected as "too narrow and technical a view of the case" the state's argument that because the depot corporation was "a separate and independent legal entity," we "ha[d] no right to consider the functions which it performs, or the relations which it bears to the railway companies who own its stock and use its depot." *Id.* at 146, 43 N.W. at 842. We therefore reversed the district court's order imposing a separate gross earnings tax on the depot corporation. *Id.*

In contrast to *St. Paul Union Depot*, in *Milwaukee Motor Transportation* we declined to disregard, for corporate income tax purposes, the separate corporate status of a trucking company even though it was wholly owned by a railroad that was subject to the gross earnings tax. 292 Minn. at 77–78, 193 N.W.2d at 612. We noted that "[n]early all" of the trucking company's revenues were earned from performing services for the railroad, and as a result the railroad paid a gross earnings tax on "[n]early all" of the trucking company's revenues. *Id.* at 68–69, 193 N.W.2d at 607. But we concluded that the fact that the trucking company was authorized to, and did, "engag[e] in trucking services unrelated to railroad business" meant that the trucking company was "a distinct and separate corporate entity with an independent corporate vitality." *Id.* at 77, 193 N.W.2d at 611. We therefore concluded that the trucking company and the railroad were not "the same taxable entity" and the separate corporate status of the trucking company could not be disregarded. *Id.* at 78, 193 N.W.2d at 612.

In *Community Hospital Linen Services, Inc. v. Commissioner of Taxation,* we considered the tax status of property

owned by two nonprofit cooperative associations owned and operated, in turn, by a group of public hospitals to provide laundry, collection, and printing services for the hospitals. 309 Minn. 447, 448–49, 245 N.W.2d 190, 191 (1976). Each cooperative association was limited by its articles of incorporation to performing services for its members, and each cooperative's articles of incorporation further limited membership in the cooperative to hospitals that were tax-exempt organizations. *Id.* at 449, 245 N.W.2d at 191–92. Under such an arrangement, we noted that no "private advantages accrue as a result of the formation of the separate associations," as compared to the operation of separate tax-exempt facilities. *Id.* at 456, 245 N.W.2d at 195. Based on this analysis, we affirmed the principle that "a subordinate corporation organized solely to serve parent corporations may be disregarded as a separate tax entity" and held that the subject property was tax-exempt. *Id.* at 455, 458, 245 N.W.2d at 195–96.

From these three cases, we can derive two general principles. First, we disregard an entity's separate corporate status for tax purposes only in limited circumstances. As we stated in *Milwaukee Motor Transportation,* the general rule is that "[i]f a corporation elects to treat itself as an independent business for some purposes, it should not be permitted to disavow that identity merely to avoid the resultant tax consequences." 292 Minn. at 73, 193 N.W.2d at 609.

Second, we will disregard the separate corporate status of the real property's fee owner only if the owner "could have no purpose or existence apart from the operations of" the entities with which it is sought to be aggregated. *Id.* at 77, 193 N.W.2d at 611. For example, in *Community Hospital Linen* we said we would disregard the separate corporate status of the cooperative associations who owned the property because the cooperatives were "organized solely for and devoted exclusively to serving the needs of the member hospitals." 309 Minn. at 456, 245 N.W.2d at 195. On the other hand, a fee owner that performs services for entities other than those with which it is to be aggregated is, in the language of *Milwaukee Motor Transportation,* "a distinct and separate corporate entity with an independent corporate vitality," whose separate corporate existence cannot be disregarded. 292 Minn. at 77, 193 N.W.2d at 611; *see also Community Hospital Linen,* 309 Minn. at 456, 245 N.W.2d at 195 ("Respondent's articles of incorporation specifically forbid them from engaging in any activities unrelated to their purpose of serving the member hospitals.").

In this case, the county argues that *Community Hospital Linen* establishes an exception to the general rule that is even narrower than we indicate above. The county asserts that in order for *Community Hospital Linen* to apply, and the separate corporate existence of the property's fee owner to be disregarded for purposes of section 273.19, the subject property must be owned by a subsidiary of the tax-exempt entity. That is, the county argues that although in *Community Hospital Linen* we attributed to the laundry the charitable characteristics of the hospitals that owned it, *Community Hospital Linen* must be limited to situations involving property owned by a subsidiary of a tax-exempt entity. The county contends that there is no authority under *Community Hospital Linen* for imputing tax-exempt status to HealthEast by relying on the charitable nature of the public hospitals. In support of that argument, the county notes that, in contrast to the structure used in *Community Hospital Linen,* the tax court described HealthEast as a "holding company that owns * * * a number of

\* \* \* hospitals" and described those hospitals as "subsidiaries" of HealthEast.

We reject the county's argument for two reasons. First, the tax court's description of HealthEast as the parent corporation of the public hospitals and clinics is imprecise. The record confirms that HealthEast is a non-profit, non-stock corporation under Minn.Stat. ch. 317A. Under HealthEast's articles of incorporation, control is vested in a board of directors. Under HealthEast's bylaws, all the members of HealthEast's board of directors must also be members of the boards of directors of each of the four public hospitals in the HealthEast care system. Therefore, control and management of the four public hospitals is vested in HealthEast by virtue of its board of directors, who also govern the four public hospitals. But, at the same time, control and management of HealthEast is vested in the four public hospitals, whose directors also govern HealthEast. The first premise underlying the county's argument, namely, that HealthEast is the "parent" corporation and therefore controls the four public hospitals, and that the four hospitals do not exercise control over HealthEast, is not supported by the facts of this case.

Moreover, the corporate structure at issue in *Community Hospital Linen* was not the typical parent-subsidiary relationship. Community Hospital Linen was a nonprofit cooperative association organized under Minn.Stat. ch. 308, the members of which were four Minneapolis hospitals. 309 Minn. at 449, 245 N.W.2d at 191–92. At the time *Community Hospital Linen* was decided, Minn.Stat. § 308.11 (1976) provided that cooperative associations be governed by a board of directors, each member of which was required to be a member of the cooperative itself. Accordingly, as we noted, representatives designated by the members of the cooperative served as directors and officers of Community Hospital Linen. 309 Minn. at 449, 245 N.W.2d at 192. The second premise of the county's argument, namely, that *Community Hospital Linen* involved parent hospitals owning a subsidiary, is not supported by the facts of that case. We therefore conclude that the corporate structure of HealthEast does not prevent the application of the general principles we announce here simply because those principles are derived, in part, from *Community Hospital Linen*.

■ As we noted above, the tax court concluded that HealthEast is not a "benevolent society or institution" or a "corporation whose property is not taxed in the same manner as other property." But the court did not explicitly apply the principles we announce today in determining whether to examine HealthEast or the larger HealthEast care system. Under the specific circumstances of this case, the general principles we announce today must be applied in the first instance to determine the proper entity to evaluate as the property's fee owner for purposes of section 273.19. That is, the tax court should have first considered explicitly whether the separate corporate status of the property's fee owner, HealthEast, could be disregarded because HealthEast "could have no purpose or existence apart from the operations of" the entities with which it sought to be aggregated. *Milwaukee Motor Transp.*, 292 Minn. at 77, 193 N.W.2d at 611. Only then could the tax court consider whether the property is tax-exempt under section 273.19's special definition, because it is owned by a "benevolent society or institution" or by a "corporation whose property is not taxed in the same manner as other property."

It is not clear from the record whether "the substance of the arrangement" between the applicable entities is such that HealthEast has a "purpose or existence apart from" either the four public hospitals

that control it or the rest of the HealthEast care system. *Community Hospital Linen,* 309 Minn. at 455, 245 N.W.2d at 195. There is some suggestion in the record that HealthEast may perform services for entities outside the HealthEast care system,[5] which we held in *Milwaukee Motor* was sufficient to make that entity "a distinct and separate corporate entity with an independent corporate vitality." 292 Minn. at 77, 193 N.W.2d at 611. At the same time, HealthEast's articles of incorporation provide that it is to be "operated exclusively for the benefit of, to perform the functions of, or to carry out the purposes of" the four public hospitals. Again, the tax court made no finding in this regard, one way or the other.

For all the foregoing reasons, we conclude this matter requires further proceedings. We therefore reverse the tax court and remand the matter. On remand, the tax court must determine whether HealthEast, either on the basis of the existing record or such further evidence as the tax court may in its discretion admit, has met its burden to prove that it does not have "a purpose or existence apart from" the HealthEast care system. If the tax court determines that HealthEast has met that burden, then in determining whether Bethesda Clinic qualifies as tax-exempt property under Minn.Stat. § 273.19, the tax court should consider the HealthEast care system as the property's owner.

Reversed and remanded.

PAGE and GILDEA, JJ., took no part in the consideration or decision of this case.

---

5. For example, HealthEast's 2002 tax return states that "HealthEast employees perform employee assistance services for * * * unaffiliated organizations," and that HealthEast charges for these services.