**HEALTHEAST, Relator,**

and

**University of Minnesota Physicians,
Intervenor,**

v.

**COUNTY OF RAMSEY, Respondent.**

No. A08–2190.

Supreme Court of Minnesota.

Aug. 6, 2009.

J. Patrick Plunkett, Martin D. Kappenman, Moore, Costello & Hart, P.L.L.P., St. Paul, Minnesota, for relator.

Michael C. Flom, Gray, Plant, Mooty, Mooty & Bennett, P.A., Minneapolis, Minnesota, for intervenor.

Darwin J. Lookingbill, Ramsey County Attorney's Office, St. Paul, Minnesota, for respondent.

## OPINION

ANDERSON, PAUL H., Justice.

Relator HealthEast appeals from the Minnesota Tax Court's decision denying an exemption from real estate taxes assessed in 2002, 2003, and 2004 on its real property housing the Bethesda Clinic. HealthEast and University of Minnesota Physicians contend that the subject real property is exempt from taxation under Minn.Stat. § 273.19 (2008). At the time of the assessments, the real property was owned by HealthEast and leased to the University of Minnesota and University of Minnesota Physicians. HealthEast and its affiliates, collectively known as the HealthEast care system, provide acute and tertiary hospital services, long-term care services, and various other health care and health care-related services. HealthEast provides management services for a fee to various hospitals and clinics in the HealthEast care system.

On remand from our opinion in *HealthEast v. County of Ramsey*, 749 N.W.2d 15 (Minn.2008) (*HealthEast I*), the tax court again affirmed the Ramsey County Assessor's classification of the subject real property by holding that the property is not exempt from real property taxes under Minn.Stat. § 273.19. The tax court found that HealthEast had not met its burden to prove the HealthEast care system should be considered the property's owner, and

therefore the property was not entitled to the tax exemption. We affirm.

HealthEast is a Minnesota non-stock, non-profit corporation that was the fee owner of the subject real property for all three tax assessment years at issue–2002, 2003, and 2004.[1] The property, at 580 Rice Street in Saint Paul, Ramsey County, Minnesota, houses the Bethesda Clinic. In assessment year 2002, the University of Minnesota leased the property and operated the clinic. In assessment years 2003 and 2004, intervenor UMPhysicians assumed the lease and operated the clinic. UMPhysicians is the designated faculty clinical practice organization of the University of Minnesota Medical School. Residents in the medical school's Department of Family Practice and Community Health receive training through Bethesda Clinic. The clinic is located in a low-income St. Paul neighborhood and treats patients regardless of their ability to pay.

HealthEast and its affiliates are known collectively as the HealthEast care system, which provides acute. and tertiary hospital services, long-term care services, and various other health care and health care-related services. Services are provided through a number of separate, but affiliated, legal entities that are controlled, directly or indirectly, by HealthEast. HealthEast is also a management company that provides centralized services such as accounting, finance, marketing, and human resources services to the various hospitals and clinics in the care system. HealthEast "back-charges" the organizations for the cost of the services performed. The amount charged is "based on utilization and is allocated to each entity within the HealthEast Care System at cost." The tax court found that the fee charged is a percentage of the operating expense of the subsidiary.

HealthEast's Articles of Incorporation state that HealthEast "shall be operated exclusively for charitable purposes" and "exclusively for the benefit of, to perform the functions of, or to carry out the purposes of Bethesda, St. John's, St. Joseph's and Woodwinds [hospitals]. . . ." HealthEast is a "separate entity" from the affiliated organizations in the care system and files its own informational tax return. Besides its relationships with the affiliated entities, HealthEast has derived revenue from entities that are outside, or arguably outside, the HealthEast care system.

Ramsey County assessed real property taxes against the subject property in 2002, 2003, and 2004. HealthEast timely petitioned for review of each assessment. On May 1, 2007, the tax court concluded that the subject property was not exempt from real property taxes as a property owned by an institution of purely public charity under Minn.Stat. §§ 272.02 (2008), subd. 7, or 273.19, subd. 1. The court affirmed the Ramsey County Assessor's classification of the subject property for January 2, 2002, January 2, 2003, and January 2, 2004. HealthEast appealed to our court.

On appeal, HealthEast argued the subject property satisfied Minn.Stat. § 273.19, which makes property tax-exempt when it is owned by a tax-exempt entity, leased to another tax-exempt entity, and used for a tax-exempt purpose. *HealthEast I,* 749 N.W.2d at 19. HealthEast did not challenge the tax court's finding that HealthEast itself did not qualify as an entity

---

1. The facts and procedural history of this case are set forth at length in our prior decision on this matter, *HealthEast v. County of Ramsey,* 749 N.W.2d 15 (Minn.2008) (hereinafter *HealthEast I* ). We discuss here those facts rele- vant to our analysis of whether HealthEast's relationships with the outside entities demonstrate that it has "a purpose or existence apart from" the HealthEast care system. *See* 749 N.W.2d at 23.

whose property is tax-exempt under section 273.19. *Id.* But HealthEast asserted that the court should have ignored HealthEast's status as a separate corporate entity and instead attributed to it the characteristics of the tax-exempt HealthEast care system, particularly the characteristics of the system's four public hospitals. *Id.* at 20.

We reversed the tax court's decision denying the exemption and remanded. *HealthEast I*, 749 N.W.2d at 24. We concluded that in determining whether to treat HealthEast or the HealthEast care system as the owner of the subject property, the tax court had failed to explicitly apply the principles of our previous decisions establishing when a corporate entity's separate corporate status may be disregarded. *Id.* at 23. We noted that the record suggested HealthEast performed services for outside entities. *Id.* at 24. But we said it was "not clear from the record whether 'the substance of the arrangement' between the applicable entities [was] such that HealthEast has 'a purpose or existence apart from'" the HealthEast hospitals or the rest of the HealthEast care system. *Id.* at 23–24. We remanded for the tax court to determine whether HealthEast had met its burden to prove "that it does not have 'a purpose or existence apart from' the HealthEast care system." *Id.* at 24. We concluded that, if the tax court were to determine that HealthEast had met that burden, then the court, in deciding whether the subject property qualified as tax-exempt, was to consider the HealthEast care system as the property's owner. *Id.*

On July 7, 2008, the tax court issued an order setting a briefing schedule and seeking additional evidence related to 1) the nature, scope, value, and extent of any services HealthEast performs for outside entities, 2) the relationship between Heal-

thEast and the care system hospitals and clinics, and 3) whether the substance of the arrangement between the applicable entities was such that HealthEast had a "purpose or existence apart from" the hospitals or the rest of the care system. HealthEast and Ramsey County both filed briefs. HealthEast filed exhibits consisting of selected pages from its 2001, 2002, and 2003 tax returns. HealthEast also filed an affidavit and supplemental affidavit of Paul Keenan, its System Director of Tax, addressing the nature of HealthEast's services provided to organizations outside the HealthEast care system.

Based on the parties' memoranda and the files and records of the proceedings, the tax court concluded that HealthEast did not meet its burden to prove that it does not have a separate purpose or existence apart from either the four public hospitals or the rest of the HealthEast care system. *HealthEast v. County of Ramsey*, Nos. C4–03–4664, C3–04–4505, C0–05–4553, 2008 WL 5102621, at *1 (Minn. T.C. Nov. 18, 2008). The court found that HealthEast "performs a number of services for entities" which were outside the care system and which HealthEast did not control. *Id.* at *2. Thus, the court found that HealthEast "does not exclusively serve the needs of its member hospitals." *Id.* at *4. The court also found HealthEast's Articles of Incorporation insufficiently restrictive compared to the articles of the cooperative associations in *Community Hospital Linen Services, Inc., v. Commissioner of Taxation*, 309 Minn. 447, 449, 245 N.W.2d 190, 191 (1976). *Id.* The court concluded there was no authority to support HealthEast's argument for a de minimis exception from the standards set by our court for when an entity's separate corporate structure may be disregarded. *Id.* at *3. Therefore, the tax court concluded that it "need not consider" the care system as the subject prop-

erty's owner, and as a result held that the subject property did not qualify under Minn.Stat. § 273.19 as tax-exempt property for the assessment years in question. *Id.* at *4. HealthEast again appealed to our court.

We review tax court decisions to determine whether the court's decisions are supported by the evidence and in conformity with the law. *Bond v. Comm'r of Revenue,* 691 N.W.2d 831, 835 (Minn.2005). Here, HealthEast and UMPhysicians do not challenge the tax court's factual findings, but they challenge its conclusions of law. Where the facts are undisputed, we review the tax court's legal determinations, including the interpretation of statutes, de novo. *Manpower, Inc. v. Comm'r of Revenue,* 724 N.W.2d 526, 528 (Minn.2006). Under Minn.Stat. § 272.01, subd. 1 (2008), all property is presumed taxable, and we have held that the taxpayer bears the burden of proving entitlement to an exemption. *E.g., Croixdale, Inc. v. County of Washington,* 726 N.W.2d 483, 487 (Minn. 2007). Exemptions from property tax liability are strictly construed. *E.g., Am. Ass'n of Cereal Chemists v. County of Dakota,* 454 N.W.2d 912, 914 (Minn.1990).

The ultimate issue before us is whether HealthEast's separate corporate tax status should be disregarded in deciding whether the subject property is tax-exempt under Minn.Stat. § 273.19. Resolution of this issue turns on whether HealthEast has met its burden to prove that it does not have "a purpose or existence apart from" the HealthEast care system.

Minn.Stat. § 273.19 addresses the tax status of property that is owned by a tax-exempt entity and leased to another entity. Under section 273.19, subd. 1, with certain exceptions not applicable here, "tax-exempt property held under a lease for a term of at least one year, and not taxable under section 272.01, subdivision 2, or under a contract for the purchase thereof, shall be considered, for all purposes of taxation, as the property of the person holding it." "As a result, when property that is tax-exempt under section 273.19 is leased to a tax-exempt entity and used for a tax-exempt purpose, it remains tax-exempt." *HealthEast I,* 749 N.W.2d at 19. Put another way, section 273.19 provides an exception to the requirement that, to be exempt from taxation, real property must be both owned by an exempt entity and used by that entity for an exempt purpose. *Id.* Here, HealthEast argues that its arrangement with UMPhysicians comes within this exception because UMPhysicians holds the subject property and uses it for an exempt purpose.

Section 273.19 also defines tax-exempt property, which is "property owned by the United States, the state, a school, or any religious, scientific, or benevolent society or institution, incorporated or unincorporated, or any corporation whose property is not taxed in the same manner as other property." Minn.Stat. § 273.19, subd. 1. HealthEast does not contend that, by itself, HealthEast is a "benevolent society or institution," or a "corporation whose property is not taxed in the same manner as other property." But HealthEast argues that the HealthEast care system, as a whole, is either a "benevolent society or institution," or a "corporation whose property is not taxed in the same manner as other property." HealthEast asserts that its status as a separate corporate entity should be ignored and that instead the tax-exempt characteristics of the care system should be attributed to HealthEast.

As we explained in *HealthEast I,* two general principles apply when a corporation seeks to be disregarded as a separate tax entity. First, we will disregard an entity's separate corporate status

for tax purposes only in limited circumstances. 749 N.W.2d at 22. "[T]he general rule is that '[i]f a corporation elects to treat itself as an independent business for some purposes, it should not be permitted to disavow that identity merely to avoid the resultant tax consequences.'" *Id.* (quoting *Milwaukee Motor Transp. Co. v. Comm'r of Taxation*, 292 Minn. 66, 73, 193 N.W.2d 605, 609 (1971)). Second, we will disregard the separate corporate status of the fee owner of real property only if the owner "could have no purpose or existence apart from the operations of" the entities with which it seeks to be aggregated. *HealthEast I*, 749 N.W.2d at 22 (quoting *Milwaukee Motor Transp.*, 292 Minn. at 77, 193 N.W.2d at 611). A fee owner of property "that performs services for entities other than those with which it is to be aggregated is ... 'a distinct and separate corporate entity with an independent corporate vitality,' whose separate corporate existence cannot be disregarded." *Id.* (quoting *Milwaukee Motor Transportation*, 292 Minn. at 77, 193 N.W.2d at 611).

We have answered the "purpose or existence apart" question by examining the activities of the corporation that seeks to be aggregated with a tax-exempt affiliate. In *Community Hospital Linen*, we considered the tax status of property owned by two cooperative associations which were owned and operated by a group of public hospitals to provide laundry, collection, and printing services to the hospitals. 309 Minn. 447, 449, 245 N.W.2d 190, 191. We disregarded the separate corporate status of the cooperative associations that jointly owned the property at issue because the cooperatives were "organized solely for and devoted exclusively to serving the needs of the member hospitals." 309 Minn. at 456, 245 N.W.2d at 195. Several factors led to our conclusion that the cooperatives were merely arms or agencies of the member hospitals. One factor was that the cooperative associations' articles of incorporation "specifically forbid them from engaging in any activity unrelated to their purpose of serving the member hospitals." *Id.*, 245 N.W.2d at 195. We drew a contrast in *Community Hospital Linen* to the subsidiary trucking company that sought the status of its tax-exempt parent corporation in *Milwaukee Motor Transportation. See Community Hospital Linen*, 309 Minn. at 455, 245 N.W.2d at 195 (quoting *Milwaukee Motor Transportation*, 292 Minn. at 77, 193 N.W.2d at 611.) We said the subsidiary trucking company was not prevented from performing services for entities other than its parent corporation, and therefore the subsidiary was in both substance and form "a separate legal entity and could not disavow that fact for tax purposes." *Id.*, 245 N.W.2d at 195.

With the foregoing analytical framework and case law in mind, we now examine the activities of HealthEast, including services it performs for other entities. Ramsey County contends that HealthEast's services for outside entities demonstrate that HealthEast is not organized solely for and devoted exclusively to the needs of its member hospitals. HealthEast appears to argue that the services should not count against it, either because the outside entities existed for charitable purposes or because the level of services rendered was minimal. We agree with the tax court that the nature and extent of services performed by HealthEast for several outside entities suggest that we should not disregard HealthEast's separate corporate existence. To understand how we come to this conclusion, we must examine the outside entities served by HealthEast and the services it has provided to these entities.

*Portico HealthNet*

Portico HealthNet was founded by the HealthEast care system in 1995 as the

MetroEast Program for Health. In its 2001 tax return, HealthEast described Portico as

> a neighborhood based health care access program serving Ramsey, Washington and Dakota counties. They provide health care services to low-income uninsured people. Their mission is "to promote the health and wellness of the uninsured by providing compassionate primary & preventative care through community collaboration". [sic] The governing philosophy of MetroEast is to improve the health of neighborhoods they serve by providing access to these primary and preventative services on a continuous basis so that the health of the residents is not jeopardized during periods of uninsurance.
>
> ... [HealthEast's] [management] services include the lease of employees to MetroEast & managing their operations[.] MetroEast reimburses HealthEast for all expenses incurred. HealthEast charges MetroEast at cost.

Since 1995, Portico has enrolled more than 7,000 uninsured children and adults in its "safety-net coverage program." Another 6,000 have been enrolled in "public coverage programs" with Portico's assistance. Portico became a "free-standing nonprofit, tax-exempt organization" in 2000. Since 2000, HealthEast has provided employees to Portico, with Portico reimbursing HealthEast at cost for the employees' wages.[2]

Nothing in the record suggests that HealthEast's participation in Portico benefits the HealthEast hospitals or care system. The venture, by providing health care to uninsured Minnesotans, surely appears to benefit the community at large, but a general benefit to the community at large is not part of our test for disregarding an entity's separate corporate status. HealthEast could have supplemented the record on remand in order to show that the Portico venture benefits the HealthEast hospitals or care system, but HealthEast did not avail itself of the opportunity. Applying the principles of *Milwaukee Motor Transportation* and *HealthEast I*, we conclude that HealthEast's participation with Portico is a strong indication that HealthEast has a "purpose or existence apart from" its affiliated hospitals and care system.

*Other services to outside entities*

Besides Portico, HealthEast has also performed services for several other entities. First, HealthEast employees provided employee assistance services such as counseling for personal and work related concerns to organizations outside the HealthEast system. The gross revenue for these services was $9,412 in 2002, $8,639 in 2003, and $6,802 in 2004.[3] HealthEast stopped providing these services to unaffiliated organizations in 2005. Second, HealthEast reported $399 in 2002 and $60 in 2003 in unrelated business income for creating signs for medical providers outside the HealthEast Care System. Third, HealthEast reported $6,973 in unrelated business income for repairs made by Heal-

2. The record before us does not separately report the revenue from HealthEast's services for Portico. HealthEast's tax return reported on one line the combined amount received for management services rendered to both Portico and HealthEast Foundation. The Tax Court found that HealthEast in those three tax years received combined revenue of $11,848,943 for services to Portico and the foundation. HealthEast's tax reporting leaves us unable to quantify the value of the services provided to Portico.

3. The HealthEast 2001 tax return reports activity the year beginning Sept. 1, 2001, and ending Aug. 31, 2002. Likewise, the 2002 return covers Sept. 1, 2002, to Aug. 31, 2003, and the 2003 return covers Sept. 1, 2003, to Aug. 31, 2004.

thEast-employed medical equipment technicians to biomedical equipment owned by medical providers outside the HealthEast care system. Fourth, HealthEast reported revenue from its mail room of $7,051 over three years, the result of charging the HealthEast Employee Credit Union for postage.

HealthEast essentially argues that the value of these services was "de minimis" and should not be considered in deciding whether it has a separate purpose and existence from the care system. We will leave for another day the question of whether we recognize a de minimis exception to the principles we reiterated in *HealthEast I* for determining the question of separate corporate status for tax purposes. Here, while the revenue from the employee assistance, sign-making, postage, and equipment services is small, when looked at in the context of services performed by HealthEast, we conclude that the services performed for these entities support a conclusion that HealthEast does not exist exclusively to benefit its affiliated hospitals and clinics.

*Leasing of the subject property*

HealthEast received $1,394,512 over three years from leasing the Bethesda Clinic property, first to the University of Minnesota and later to UMPhysicians. HealthEast's tax return described the revenue as "received from an unaffiliated tax exempt organization." The tax court called the leasing of the clinic property "[t]he most obvious example" of HealthEast performing services for "entities outside the HealthEast Care System, which it does not control." *HealthEast,* 2008 WL 5102621, at *2. Ramsey County

likewise argues that the leasing of the property "is not exclusively for the benefit of the member hospitals."

While it is conceivable that the clinic venture indirectly benefits the HealthEast hospitals by giving UMPhysicians' medical students a place to practice, HealthEast did not make this argument. Nothing in the record indicates that the leasing of the clinic property benefits the hospitals. Given our standard of review in tax court appeals, we conclude that HealthEast has not carried its burden on this issue and therefore we view the clinic lease as an additional indication that HealthEast has a separate purpose and existence from the care system.

HealthEast's services to outside entities and the property's lease to UMPhysicians lead us to conclude that HealthEast does in fact have a "purpose or existence apart from" the hospitals and care system. Therefore, because HealthEast failed to meet its burden to demonstrate that it does not have "a purpose or existence apart from" the HealthEast care system, the care system may not be considered the owner of the subject property, and thus we conclude that the subject property does not qualify as tax-exempt property under Minn.Stat. § 273.19.[4]

We do not doubt HealthEast's value to the community. But based on the record before us, we are unable to conclude that HealthEast has met its burden under the applicable statutes and our case law to have its separate corporate tax status disregarded. Therefore, we hold that the tax court correctly concluded that the Bethesda Clinic property is not exempt from real

---

**4.** Because we decide that HealthEast has not met its burden to demonstrate that it has "a purpose or existence apart from" the HealthEast care system, and therefore does not satisfy the first element of Minn.Stat.

§ 273.19 for exemption from property taxes, we need not and do not consider whether the second element of the statute is met that is, whether the lessee, UMPhysicians, is a tax-exempt entity.

property taxes assessed by Ramsey County in 2002, 2003, and 2004.

Affirmed.

PAGE, Justice, took no part in the consideration or decision of this case.

GILDEA, Justice, took no part in the consideration or decision of this case.